THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ADAM BRIGGS, PAULA BRIGGS, his wife, JOSHUA BRIGGS, and SARAH BRIGGS, | : : : : |
|           Plaintiffs | :   3:21-CV-520 |
| | :   (JUDGE MARIANI) |
| v. | :   (Magistrate Judge Carlson) |
| | : |
| SOUTHWESTERN ENERGY PRODUCTION COMPANY, a/k/a SWN PRODUCTION COMPANY, LLC, | : : : |
| | : |
|           Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION

Presently before the Court is Magistrate Judge Martin Carlson's Report and Recommendation ("R&R") (Doc. 14), which recommends that this Court grant Defendant Southwestern Energy Production Company, a/k/a SWN Production Company, LLC's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 2.) Plaintiffs Adam Briggs, Paula Briggs, Joshua Briggs, and Sarah Briggs filed objections to the R&R, which focus on whether *Briggs I*[1] was decided "on the merits" for purposes of *res judicata*. (*See* Doc. 15.) Upon review, the Court determines that Plaintiffs' objections are without merit,

---

[1] As explained in the R&R, *Briggs I* refers to Plaintiffs' previous lawsuit, commenced in 2015, concerning nearly identical subject matter.

1

and therefore Plaintiffs' Complaint should be dismissed. However, because Plaintiffs' claims are precluded only to the extent they arose before or during the pendency of *Briggs I*, Plaintiffs will be granted leave to amend their Complaint.

## II. ANALYSIS

### A. On the Merits

First, the Court addresses Plaintiffs' objections. (*See* Doc. 15.) Although the Court largely agrees with Judge Carlson's conclusion, the R&R relies upon federal instead of state law with respect to whether the decision in *Briggs I* was "on the merits." (*See* Doc. 14 at 14–15.) Upon review, this Court finds that state law applies to this issue. However, because federal and Pennsylvania law are substantially the same as they pertain to this element of claim preclusion, the outcome remains unchanged, and the Court agrees that dismissal of Plaintiffs' Complaint is warranted.

Plaintiffs' four objections are restatements of the same argument: that the R&R erroneously held that *Briggs I*, which involved the "same plaintiffs against the same defendant . . . on the same causes of action[,] . . . had been decided against the plaintiffs on the merits thereof." (Doc. 15 at 1.) This argument fails under Pennsylvania law, as under federal law.

Pennsylvania law governs the question of whether *Briggs I* resulted in a judgment on the merits. Pursuant to the Full Faith and Credit statute, 28 U.S.C. § 1738, "the preclusive effect that a federal court must give to a state court judgment is determined by reference to

2

the state law of preclusion." *Cole v. Finsel*, 691 F. Supp. 841, 845 (M.D. Pa. 1988). Here, the initial, preclusive judgment was obtained under Pennsylvania law in Pennsylvania state court. *See Briggs v. Sw. Energy Prod. Co.*, 2020 WL 7233111, at *4 (Pa. Super. Ct. 2020). Indeed, with the exception of this issue, Judge Carlson correctly analyzed claim preclusion under Pennsylvania law throughout the R&R.

In any event, the application of Pennsylvania law warrants the same result. Plaintiffs' reading of "on the merits" misses the mark under both Pennsylvania and federal law. Plaintiffs contend that because they "never even got 'in the [c]ourthouse' let alone their 'day in [c]ourt,'" the decision in *Briggs I* was not on the merits. (Doc. 16 at 5.) Plaintiffs emphasize that the Pennsylvania Supreme Court did not decide the case on the basis of the substantive question before it, regarding the "rule of capture." (*See id.* at 3, 4.) To be sure, on remand, the Superior Court's decision rested more on the sufficiency of the pleadings than on substantive property law; the court concluded that the claim was legally cognizable but insufficiently pled. *See Briggs*, 2020 WL 7233111, at *4 (analyzing allegations in complaint); *see id.* at *4 n.4 (noting the Supreme Court's decision left open "for future plaintiffs the possibility of litigating trespass claims based on hydraulic fracturing, so long as they specifically plead" that a physical invasion of their property occurred). Specifically, because Plaintiffs failed to allege any physical intrusion, the court was "constrained to reinstate the trial court's Order granting summary judgment in favor of Southwestern." *Id.* at *4.

But Plaintiffs' argument fails because a decision based on the sufficiency of the pleadings may still be on the merits. As noted *supra*, the Superior Court's decision on remand technically affirmed the trial court's grant of summary judgment for Defendant, but rested on Plaintiffs' failure to allege certain facts in their Complaint. *See id.* Whether the Superior Court's decision is considered a disposition on the pleadings or on summary judgment, the same outcome results. "Dismissal of an action for failure to state a claim is a final judgment on the merits," *Brown v. Cooney*, 296 Pa. Super. 117, 120, 442 A.2d 324, 326 (1982); *see also Cole*, 691 F. Supp. at 847, as is the entry of summary judgment. *See Khalil v. Cole*, 240 A.3d 996, 1005 (2020) (holding *res judicata* applied following entry of summary judgment). It makes no difference that Plaintiffs perhaps *could have* stated a claim, had they included in their *Briggs I* complaint allegations that a physical intrusion occurred. *See* 18A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Fed. Prac. & Proc. Juris.* § 4439 (3d ed.) (explaining that "[t]oday, most federal and state courts hold that the second action is precluded" when "a prior action was dismissed because the plaintiff made an inadequate effort to plead a legally recognizable claim and a second action is brought on an improved complaint").

As Defendant suggests (*see* Doc. 17 at 10), Plaintiffs could have sought relief by challenging the Superior Court's implicit decision to deny them leave to amend their complaint, either via a motion for reconsideration or direct appeal. But Plaintiffs apparently did not seek such relief then, and their *Briggs I* complaint was dismissed with prejudice.

4

See *Briggs*, 2020 WL 7233111, at *4. That decision was on the merits and precludes the nearly identical claims before the Court now—but only to the extent the present Complaint alleges claims that arose before or during the pendency of *Briggs I*.

### B. Claims Arising After *Briggs I*

To the extent Plaintiffs' claims arose *after* the conclusion of *Briggs I*, those claims are legally distinguishable: They were not asserted, and by definition, cannot possibly have been asserted, in *Briggs I*. For this reason, Plaintiffs are not precluded from asserting otherwise identical claims that concern conduct that succeeded *Briggs I*.

The nature of Plaintiffs' claims, specifically their reference to continuing wrongful activity, render them unique in the context of *res judicata*. The present Complaint closely tracks the *Briggs I* complaint, and the causes of action asserted in both—for trespass, conversion, and punitive damages—all stem from a continuing trespass claim. (*See* Doc. 1-2 at 7 ("The actions of [Defendant], as aforesaid, constitute a past and continuing trespass on the land of the Plaintiffs."); Doc. 2-1 at 5 (same).) Inexplicably, Plaintiffs provide no dates to identify the periods during which they allege Defendants physically invaded their property via their hydrofracking activity.[2] Still, both complaints clearly allege that Defendants' conduct is ongoing, and seek to recover damages "in an amount equal to the value of all the natural gas extracted by [Defendant] from under the land of the Plaintiffs to

---

[2] The only dates they provide concern the deed of their property, in December 2013. (Doc. 1-2 at 4.)

the date of judgment in this case" and "in an amount equal to the value of all the natural gas . . . to be extracted in the future." (Doc. 1-2 at 8; Doc. 2-1 at 5.) The simple fact that the present Complaint alleges past and continuing trespass *as of a later date*—March 22, 2021—makes the difference.

In other words, the present Complaint uses the same language but necessarily puts at issue some conduct that the *Briggs I* complaint did not, because that conduct had not yet occurred when *Briggs I* was pending. Specifically, the Complaint raises, for the first time, any trespass or conversion that allegedly occurred after the conclusion of *Briggs I* and through "the date of judgment in this case." (*Id.*) And as the Pennsylvania Supreme Court explained in *Callery v. Municipal Authority of Blythe Township*, res judicata cannot apply to claims concerning activity that succeeded the previous, purportedly preclusive lawsuit. 243 A.2d 385, 387 (1968).

The facts of *Callery* are instructive. There, the plaintiff brought an action in equity against her local municipal authority, alleging it had failed to provide "pure and wholesome water." *Id.* at 387. The plaintiff sought an injunction as well as "damages caused by the acts of the authority prior to June, 1962." *Id.* In November 1964, a hearing was held and the complaint was dismissed based on findings that the water was suitable. *Id.* The court's findings were based on tests and reports produced by various entities, all "made [p]rior to the opinion date." *Id.* at 388. A year later, the authority cut off the plaintiff's water for failure to pay. *Id.* The plaintiff then filed another complaint, asserting "the failure to provide 'pure

6

and wholesome water' for the period prior to December 6, 1965 and [seeking] money damages in trespass from the authority for allegedly wrongful shutting off of [the plaintiff's] service and for refusal to restore the service." *Id.*

The Pennsylvania Supreme Court held that res judicata did not fully preclude the second complaint. The court summarized the issue as follows:

> The 1962 action was thus brought on the basis that the authority supplied unwholesome water [p]rior to June, 1962. The chancellor's decision was that the authority's water was wholesome up to some time in 1964. The 1965 action presented at least one new issue which could not possibly have been decided in the earlier action. Did the authority furnish 'pure and wholesome water' during the calendar year 1965?

*Id.* The court acknowledged the likelihood that "the 1964 equity adjudication is res judicata as to the wholesomeness of the water up to the date of the last test made in 1964 by the Department of Health or by outside agencies or perhaps even as of the date of the 1964 decree." *Id.* But, as the court noted, "the condition of the water may well have changed after the 1964 decree was rendered." *Id.* As such, the plaintiff's second claim "could not possibly have been raised in the 1962 action." *Id.*

This fact was dispositive, because "an adverse adjudication against a party concerning conditions allegedly existing in year 'X' is not res judicata of a claim that the conditions which were adjudicated not to exist in year 'X' do exist in year 'Y', a year not covered by the year 'X' adjudication." *Id.* (first citing *Rieck Ice Cream Company Appeal*, 209 A.2d 383 (1965); and then citing *Haefele v. Davis*, 160 A.2d 711 (1960)).

Such is the case here, too. As the R&R notes, four conditions must be met for *res judicata* to apply. (Doc. 14 at 15–17.) The difference in the time period covered by the present Complaint renders unsatisfied the first condition: that the two actions share an "identity of the thing sued upon." *Callery*, 243 A.2d at 387; *see also Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988) (applying Pennsylvania law). In *Briggs I*, the "thing sued upon," or the alleged wrongful act, was Defendant's past and continuing hydrofracking activity, up through the date of judgment in that case: December 8, 2020. In the present Complaint, the "thing sued upon" is Defendant's past and continuing hydrofracking activity, up through the date of judgment in this case, which is yet unknown but necessarily in the future. The present Complaint therefore "present[s] at least one new issue which could not possibly have been decided in the earlier action": Does Defendant's activity *after December 8, 2020* constitute trespass or conversion? *Callery*, 243 A.2d at 388.

In the Court's view, this approach is the only logical one. As the Pennsylvania Supreme Court explained in *Haefele v. Davis*,

> Because the tortious conduct of the appellants was continuous in nature, it would seem anomalous for us to hold that plaintiffs were bound to seek all their damages in the one action, when we see that even at the time of the decree in the first action, they were still, and for a while thereafter, victims of the same tortious conduct of which they were complaining.

399 Pa. 504, 511, 160 A.2d 711, 714 (1960). It makes no difference that here, Plaintiffs did not recover in their first action. In this case, Plaintiffs cannot be forever precluded from

complaining about continuing conduct solely because their initial lawsuit with respect to that conduct, occurring during an earlier time period, was unsuccessful.

For all of these reasons, Plaintiffs' claims are precluded only to the extent they concern activity arising before or during the pendency of *Briggs I*. *Res judicata* does not apply to those claims regarding activity that succeeded *Briggs I*. Because Plaintiffs' Complaint asserts claims for past and continuing wrongful conduct without distinguishing between pre- and post-*Briggs I*, nor providing any details regarding timing, Plaintiffs' Complaint will be dismissed, but the Court will grant Plaintiffs leave to amend their Complaint to limit their claims temporally and assert claims concerning only that activity that could not have been the subject of *Briggs I*. See *Haefele*, 160 A.2d at 713 ("The estoppel of a former adjudication will extend only so far as the subject-matter of the second suit is substantially the same as that of the first 'and may be binding on some points while leaving others open to controversy.'" (quoting *Wright v. Weber*, 17 Pa. Super. 451, 457 (1901))).

### III. CONCLUSION

The R&R (Doc. 14) will be adopted as modified for the reasons stated herein. Plaintiffs' Complaint will be dismissed, but Plaintiffs will be granted leave to amend their Complaint in accordance with the analysis set forth *supra*.

Robert D. Mariani
United States District Judge

9