**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ADAM BRIGGS, PAULA BRIGGS,** | : | |
| **his wife, JOSHUA BRIGGS, and** | : | |
| **SARAH BRIGGS,** | : | |
| | : | |
| **Plaintiffs,** | : | **3:21-CV-520** |
| | : | **(JUDGE MARIANI)** |
| **v.** | : | |
| | : | |
| **SOUTHWESTERN ENERGY** | : | |
| **PRODUCTION COMPANY, a/k/a** SWN | : | |
| **PRODUCTION COMPANY, LLC,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

I. INTRODUCTION

Presently before the Court is Defendant Southwestern Energy Production

Company's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc.

22). Defendant, now known as SWN Production Company, LLC ("SWN"), argues that

Plaintiffs Adam Briggs, Paula Briggs, Joshua Briggs, and Sarah Briggs failed to allege a

continuing trespass in their Amended Complaint (Amend. Compl. (Doc. 21)), and that their

Amended Complaint is barred due to *res judicata* and the applicable statute of limitations.

Upon review, the Court determines that Plaintiffs raise sufficient allegations of a continuing

trespass in their Amended Complaint. Therefore, the Court will deny Defendant's Motion to

Dismiss (Doc. 22).

## II. PROCEDURAL BACKGROUND

On November 5, 2015, Plaintiffs filed their first complaint against Defendant in the Court of Common Pleas of Susquehanna County ("*Briggs I*"). (*See Briggs I* Compl. (Doc. 22-1.)) Plaintiffs, who own an 11.07-acre parcel of land in Susquehanna County, alleged that SWN was extracting natural gas on an adjacent parcel of land from the subsurface Marcellus Shale formation. (*Id*. ¶¶ 3-6, 8.) Plaintiffs claimed that SWN was extracting natural gas from underneath Plaintiffs' land by drilling on a natural gas well called "SWN Folger Gas Unit" placed on Defendant's own land. (*Id*. ¶¶ 7, 9 11.) In their complaint in *Briggs I*, Plaintiffs did not allege any specific invasion of their land through hydraulic fracking. (*See generally Briggs I* Compl.)

On August 8, 2017, the Court of Common Pleas determined that because "the gas was removed by Defendant through legal and permissible means, Plaintiffs cannot sustain their trespass claim, and by extension, they cannot sustain their claims for conversion or punitive damages," thereby granting Defendant's Motion for Summary Judgment. *Briggs v. Southwestern Energy Production Co.,* No. 2015-1253, 2017 WL 10605836, at *5 (Pa. Com. Pl. Civil Div. 2017). On appeal, the Superior Court of Pennsylvania reversed the judgment of the Court of Common Pleas, holding that:

> it is unclear from the record before us whether Southwestern's hydraulic fracturing operations resulted in a subsurface trespass to Appellants' property. There does not appear to be any evidence, or even an estimate, as to how far the subsurface fractures extend from each of the wellbore on Southwestern's lease. However, we conclude that Appellants' allegations are sufficient to raise

2

an issue as to whether there has been a trespass, and thus, entry of judgment
in favor of Southwestern was premature.

*Briggs v. Sw. Energy Prod. Co.*, 184 A.3d 153, 164 (Pa. Super. Ct. 2018).

After receiving these diverging opinions as to SWN's Motion for Summary Judgment,

the Supreme Court of Pennsylvania ruled on *Briggs I. See Briggs v. Sw. Energy Prod. Co.,*

224 A.3d 334 (Pa. 2020). The Supreme Court of Pennsylvania vacated the Superior Court's

judgment, finding that because Plaintiffs did not allege any specific physical invasion of their

land through fracking, the Superior Court "erred to the extent it assumed that either (a) the

use of hydraulic fracturing alters [the rule of capture that precludes liability in some

instances], or (b) where hydraulic fracturing is utilized, such physical invasion is a necessary

precondition in all cases for drainage to occur from underneath another property." *Id.* at 352.

Upon remand, on December 8, 2020, the Superior Court affirmed the Court of Common

Plea's order granting summary judgment to SWN. *See Briggs v. Sw. Energy Prod. Co.*, 245

A.3d 1050 (Pa. Super. Ct. 2020).

On January 12, 2021, Plaintiffs filed a new complaint in the Court of Common Pleas

of Susquehanna County ("*Briggs II*"). (*See Briggs II* Orig. Compl. (Doc. 1-2.)) This new

complaint again sued SWN for trespass, conversion, and punitive damages. (*Id.* ¶¶ 14-21.)

Plaintiffs alleged, as they did before, that SWN was extracting natural gas from under

Plaintiffs' land using a well SWN drilled as part of the "SWN Folger Gas Unit" on SWN's

adjacently owned parcel of land. (*Id.* ¶¶ 6-8, 11.)

Distinct from their *Briggs I* Complaint, Plaintiffs described the drilling and hydraulic fracturing processes that they claim Defendant employed to extract natural gas from the Marcellus Shale formation under Plaintiffs' land. (*Id*. ¶ 11.) Additionally, Plaintiffs alleged that Defendant used hydraulic fracturing to actively inject fluids and proppants into Plaintiffs' land to extract natural gas, thereby constituting a physical intrusion that caused natural gas to be removed from Plaintiffs' land and flow into Defendant's well. (*Id*. ¶ 12.)  Plaintiffs sought damages "in an amount equal to the value of all the natural gas extracted by SWN from under the land of the Plaintiffs to the date of judgment in this case," damages "in an amount equal to the value of all the natural gas extracted by SWN from under the land of the Plaintiffs to be extracted in the future," and punitive damages. (*Id*. at "Wherefore" clauses.)

On March 22, 2021, Defendant removed Plaintiffs' second action to this Court. (Doc 1.) On the same day, Defendant moved to dismiss Plaintiffs' Complaint, alleging that it was barred by claim preclusion. (*See* Doc 2.) On August 17, 2023, after considering briefing from the parties and a Report and Recommendation from Magistrate Judge Carlson, this Court granted SWN's Motion to Dismiss (Doc. 2), finding that claim preclusion applied to activities that took place before or during the pendency of *Briggs I*. *See Briggs v. Southwestern Energy Production Company*, 2023 WL 5310226, at *4 (M.D. Pa., 2023). The Court dismissed the complaint without prejudice and granted Plaintiffs leave to amend their complaint to assert claims alleged to have arisen after the time period encompassed within

4

*Briggs I*. *Id*. The Court determined that the time period encompassed within *Briggs I* and barred by claim preclusion is all times prior to December 9, 2020, the day after the final judgment in that case. *Id.* at *3.

On August 24, 2023, Plaintiffs filed their Amended Complaint (Amend. Compl.), which Defendant again moved to dismiss. (Doc. 22.)

### III. LEGAL STANDARD

A complaint must be dismissed under Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face*." Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must assert "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, ... a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "factual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but ... disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231 n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

In considering a Rule 12(b)(6) motion to dismiss, the Court generally relies on the complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The Court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically

attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288

F.3d 548, 560 (3d Cir. 2002). However, the Court may not rely on other parts of the record

in determining a motion to dismiss under Rule 12(b)(6). *See Jordan v. Fox, Rothschild,*

*O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## IV. ANALYSIS

In its present Motion to Dismiss, Defendant contends that Plaintiffs have not

adequately asserted claims that arose after December 8, 2020, the date of the final

judgment in *Briggs I*, and that "Plaintiffs' Amended Complaint is therefore barred by claim

preclusion as well as by the applicable two-year statute of limitations." (Doc. 23 at 6.)[1]

Because the disposition of Defendant's argument with respect to claim preclusion is

dependent on the Court's determination as to whether Plaintiffs allege a continuing trespass

and are barred by the statute of limitations, the Court will address the latter claims first.

Neither party cites, and the Court has not found, any particular authority directly on

point as to the instant questions. As such, the Court must predict how the Supreme Court of

Pennsylvania would interpret whether the present allegations constitute a continuing

trespass if presented with this issue. *See Nationwide Mut. Ins. Co. v. Buffetta*, 230 F.3d

634, 637 (3d Cir. 2000). Without any specific guidance from the Supreme Court of

Pennsylvania aside from its opinion in *Briggs I,* 224 A.3d 334, the Court "must look to

---

[1] The Court has previously determined that acts prior to December 9, 2020, the day after the final judgment in that case, are barred by claim preclusion. (*See* Doc. 19 at 8-9.)

decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue." *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996) (citation omitted).

## A. Continuing Trespass and Statute of Limitations

Defendant alleges that "to the extent Plaintiffs attempt to assert claims based on a continuing trespass their claims fail as a matter of law and should be dismissed." (Doc. 22 ¶ 13.) Specifically, Defendant contends that "[t]he Amended Complaint, at most, alleges only a permanent injury to land that has resulted in continuing harm in the form of alleged drainage of natural gas from under Plaintiffs' property." (*Id*. ¶ 10.)

Because the Court is sitting in diversity, the Court must apply Pennsylvania law to the facts of this case. *See Erie R.R. Co. v. Tompkins,* 58 S.Ct. 817 (1938). "Under Pennsylvania law, trespass is defined as an 'unprivileged, intentional intrusion upon land in possession of another.'" *Boring v. Google Inc.*, 362 F. App'x 273, 280 (3d Cir. 2010) (citing *Graham Oil Co. v. BP Oil Co.*, 885 F.Supp. 716, 725 (W.D. Pa. 1994)). Pursuant to Section 158 of the Second Restatement, one is subject to liability to another for trespass if one "intentionally enters land in the possession of another or causes a thing or a third person to do so, remains on the land, or fails to remove a thing which one is under a duty to remove." Restatement (Second) of Torts § 158. The applicable statute of limitations for trespass is two years. 42 Pa. C.S.A. § 5524(4) ("The following actions and proceedings must be commenced within two years . . . An action for waste or trespass of real property"); 42 Pa.

8

C.S.A. § 5524(7). The distinction between a continuing and permanent trespass for the purpose of determining the tolling of the statute of limitations has been set out in the Restatement (Second) of Torts:

> The actor's failure to remove from land in the possession of another a structure, chattel or other thing which he has tortiously erected or placed on the land constitutes a continuing trespass for the entire time during which the thing is wrongfully on the land and ... confers on the possessor of the land an option to maintain a succession of actions based on the theory of continuing trespass or to treat the continuance of the thing on the land as an aggravation of the original trespass.
>
> . . . .
>
> A continuing trespass must be distinguished from a trespass which permanently changes the physical condition of the land. Thus, if one, without privilege to do so, enters land of which another is in possession and destroys or removes a structure standing upon the land, or digs a well or makes some other excavation, or removes earth or some other substance from the land, the fact that the harm thus occasioned on the land is a continuing harm does not subject the actor to liability for a continuing trespass. Since his conduct has once for all produced a permanent injury to the land, the possessor's right is to full redress in a single action for trespass, and a subsequent transferee of the land, acquires no cause of action for the alteration of the condition of the land.

Restatement (Second) of Torts § 162 cmts. b, e (1965).[2]

---

[2] "Pennsylvania courts have adopted the sections of the Restatement (Second) of Torts that deal with continuing trespass." *Graham Oil Co.*, 885 F.Supp. at 725 –726 (citing *Mancia v. Department of Transportation*, 517 A.2d 1381, 1384 (Pa. Cmwlth. Ct. 1986)); *see also F.P. Woll & Co. v. Fifth & Mitchell St. Corp.*, 326 F. App'x 658, 662 (3d Cir. 2009) (affirmatively citing to Pennsylvania cases referencing Sections 161 and 162 of the Second Restatement); *Caruso-Long v. Reccek*, 243 A.3d 234, 239 (Pa. Super. Ct. 2020); *Sampathkumar v. Chase Home Fin., LLC*, 241 A.3d 1122, 1145 (Pa. Super. Ct. 2020); *Kowalski v. TOA PA V, L.P.*, A.3d 1148, 1161 (Pa. Super. Ct. 2019); *Jones v. Wagner*, 624 A.2d 166, 170 (Pa. Super. Ct. 1993).

Courts in Pennsylvania have described the standard for determining whether a

trespass is continuing or permanent:

> [I]n the case of a continuing trespass or nuisance it is impossible to know exactly how many incidents of trespass will occur in the future, or the severity of the damage that may be caused[.] For that reason, a party aggrieved by a continuing trespass or nuisance can maintain a succession of actions based on continuing infractions or the aggravation of the original offense.
>
> To determine whether a trespass or nuisance constitutes a permanent or continuing cause of action, courts must consider a variety of factors, including: 1) the character of the structure or thing which produces injury; 2) whether the consequences of the [trespass/nuisance] will continue indefinitely; and, 3) whether the past and future damages may be predictably ascertained.

*Caruso-Long v. Reccek*, 243 A.3d 234, 239 (Pa. Super. Ct. 2020) (quotation marks and citations omitted); *see also Sustrik v. Jones & Laughlin Steel Corp.*, 197 A.2d 44, 46-47 (Pa. 1964) and *Graybill v. Providence Twp.,* 593 A.2d 1314, 1316–1317 (Pa. 1991) (*en banc), affirmed per curiam,* 618 A.2d 392 (Pa. 1993); *Russell v. Chesapeake Appalachia, L.L.C.*, No. 4:14-CV-00148, 2018 WL 6804764, at *3 (M.D. Pa. Dec. 27, 2018) (applying the same three factor inquiry).

Here, Defendant contends that "Plaintiffs' new complaint fails to allege any facts that

could support . . . a [continuing trespass] theory." (Doc. 23 at 6.) Specifically, Defendant

argues that "Plaintiffs' Amended Complaint confirms that any fracking activity allegedly

undertaken by SWN occurred prior to December 9, 2020—the date after which this Court

concluded claim preclusion no longer bars Plaintiffs claims." (*Id.*) Plaintiffs, for their part,

contend that "[s]ince December 9, 2020, the actions of SWN, as aforesaid, have constituted

a continuing trespass on the land of the Plaintiffs." (Amend. Compl. ¶ 15.) The Court

concludes that the Plaintiffs have sufficiently alleged a continuing trespass.

In their Amended Complaint, Plaintiffs allege that the "'Folger 5H' gas well is located generally parallel to and in close proximity to the western border of Plaintiffs' land" and that "[a]t all times since December 9, 2020, through the process known as hydraulic fracturing (fracking), SWN has been and continues to extract natural gas from the Marcellus Shale formation located under the Plaintiffs' land through the bore holes of said gas wells, including 'Folger 5H.'" (Amend. Compl. ¶¶ 10-11.) Throughout Plaintiffs' Amended Complaint, Plaintiffs allege that Defendant is continuing to actively extract natural gas from Plaintiffs' property due to the proppants that are injected into Plaintiffs' land. (*Id*. ¶¶ 11, 12, 13, 14, 16, 18.)[3] Plaintiffs specifically contend that "proppants propelled into the land of the Plaintiffs remain under the land of the Plaintiffs allowing for the continued extraction of natural gas from under Plaintiffs' land." (*Id*. ¶¶ 12.10.)

Analyzing Plaintiffs' Amended Complaint under the relevant factors, the Court finds that Plaintiffs have sufficiently alleged a continuing trespass. Analyzing the first factor, "the character of the structure or thing which produces injury," *Caruso-Long*, 243 A.3d at 239, the Court finds that this factor weighs in favor of the finding that Plaintiffs allege a continuing trespass. Utilizing the language set forth in the Second Restatement, the continuous intrusion of proppants on the land, a "thing which [Defendant] has tortiously . . . placed on the land[,] constitutes a continuing trespass for the entire time during which the thing is

---

[3] The Court reads Plaintiffs' Amended Complaint as presenting allegations of present conduct with respect to Defendant's continued extraction of natural gas, directly relying on proppants that also continue to intrude onto Plaintiffs' property.

wrongfully on the land." Restatement (Second) of Torts § 161 cmt. b (1965). Contrary to Defendant's argument that Plaintiffs cannot allege a continuing trespass given that Defendant ceased propelling proppants into Plaintiffs' land in 2013 (Doc. 23 at 19-20), Pennsylvania courts have affirmatively cited the Second Restatement's contention that "a continuing trespass is committed by the 'continued presence of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the actor has the ability to remove it.' Restatement (Second) of Torts § 161(a)." *Caruso-Long*, 243 A.3d at 239 (citing *Jones v. Wagner*, 624 A.2d 166, 170 (Pa. Super. Ct. 1993) (holding that the presence of branches and trees overhanging a property line constitutes a continuing trespass)). The proppants that Plaintiffs allege Defendant placed onto Plaintiffs' land are more akin to "a structure, chattel or other thing" that remains on the land and is exploited by Defendant than a previous permanent change of land that, by itself, causes continuous harm. Restatement (Second) of Torts § 161 cmt. b (1965).

Analyzing the second factor, "whether the consequences of the [trespass] will continue indefinitely," *Caruso-Long*, 243 A.3d at 239, the Court finds that this factor also weighs in favor of finding that Plaintiffs have sufficiently alleged a continuing trespass. Since December 9, 2020, Plaintiffs allege that "SWN has been and continues to extract natural gas from the Marcellus Shale formation located under the Plaintiffs' land through the bore holes of said gas wells." (Amend. Compl. ¶ 11.) Plaintiffs note in their Brief in Opposition to Defendant's Motion to Dismiss (Doc. 24) that "the duration of the extraction of natural gas

from under Plaintiffs' land is totally unknown, thus indefinite." (*Id*. at 5.) The Court finds that

it is impossible to precisely delineate when the natural gas will be depleted from the well,

and for how long Defendant intends to use the well to extract natural gas. Plaintiffs allege

that Defendant continues to extract natural gas from the well (Amend. Compl. ¶ 11), and the

Court has no mechanism to determine when exactly the natural gas will be depleted from

the well or when Defendant will conclude its operations that rely on the proppants it is

alleged to have injected into Plaintiffs' land. Thus, it cannot be said that "the consequences

will continue indefinitely" when the consequences will inevitably conclude either at the time

that Defendant decides to cease its operations or at the time that natural gas can no longer

be extracted from Plaintiffs' land. Therefore, the Court finds that this factor weighs in favor

of concluding that Plaintiffs sufficiently allege a continuing trespass.

Finally, analyzing the third factor, whether the past and future damages may be

"predictably ascertained," *Caruso-Long*, 243 A.3d at 239, the Court finds that this factor also

weighs in favor of finding that Plaintiffs have sufficiently alleged a continuing trespass.

Plaintiffs allege in their complaint that "SWN has been and continues to extract natural gas

from the Marcellus Shale formation located under the Plaintiffs' land through the bore holes

of said gas wells." (Amend. Compl. ¶ 11.) Because it is impossible to "immediately

ascertain" precisely how much natural gas will ultimately be extracted in total from Plaintiffs'

property, "it is impossible to know . . . the severity of the damage that may be caused, such

that the full amount of damages cannot be calculated in a single action." *Kowalski v. TOA*

*PA V, L.P.,* 206 A.3d 1148, 1160 (Pa. Super. Ct. 2019); *see also Cassel-Hess v. Hoffer*, 44 A.3d 80, 86, 87 (Pa. Super. 2012); *Graybill v. Providence Twp.*, 593 A.2d 1314, 1316-1317 (Pa. Cmwlth. Ct. 1991) (*en banc*), *affirmed per curiam*, 533 Pa. 61, 618 A.2d 392. Because Plaintiffs have adequately alleged that Defendant continues to extract natural gas from Plaintiffs' land, and this Court, following the reasoning outlined in *Kowalski*, 206 A.3d at 1160, finds that it is impossible to determine how much gas will be extracted in order to ascertain the amount of damages in a single action, this factor also weighs in favor of concluding that Plaintiffs' sufficiently allege a continuing trespass. Thus, all three of the factors outlined in *Caruso-Long*, 243 A.3d at 239, weigh in favor of finding that Plaintiffs allege a continuing trespass in their Amended Complaint.

To the extent Defendant relies on other cases to contend that Plaintiffs allege merely a permanent trespass with continuing harm, Defendant is wrong. Although Defendant correctly recites much of the basic law surrounding the distinction between a continuing trespass and permanent trespass, Defendant compares the facts found here to cases that are notably distinguishable. (*See, e.g.,* Doc. 23 at 14-21.)

First, to the extent Defendant relies on *Kowalski*, 206 A.3d 1148, to contend that Plaintiffs only allege a permanent trespass, they are misguided. As this Court has found in *Sugar Bowl Ranch, LLC v. SWN Prod. Co., LLC.,* an action that was also filed against SWN under similar factual circumstances to this case, *Kowalski* supports the proposition that the extraction of resources from another's land constitutes a continuing trespass:

Pennsylvania courts have applied the doctrine in several trespass cases [such as *Kowalski*] where the tortfeasor continuously and intermittently caused water to enter the land of the plaintiff and failed to remove it. Here, the reverse is true. Plaintiffs allege that instead of continuously causing water to enter the land, Defendants are continuously removing oil from it without consent. The torts of conversion and trespass are closely related. Plaintiffs likely could bring a succession of conversion actions for each unit of oil illegally removed from their properties. Nor can the damages be reasonably calculated in one conversion action, as Defendants continue to remove oil and gas from Plaintiffs' properties.

In the similar matter of *Young v. Young*, the Supreme Court of Wyoming applied the doctrine of continuing violation to a conversion claim for oil and gas royalties due to the plaintiff under a divorce decree.

. . . .

The *Young* court ultimately allowed the plaintiff to recover for the four-year period before she filed suit, consistent with Wyoming's four-year statute of limitations for conversion actions. As in *Young*, the ongoing removal of oil from Plaintiffs' lands is a continuous series of tortious acts rather than additional damages from a singular act.

SWN cites cases in which Pennsylvania courts have held that the continuing violation doctrine did not apply to various causes of action. The Court finds these cases distinguishable. In each of the cases, the alleged wrong can be broken into discrete acts or transactions instead of a continuing course of conduct. Unlike *Young* or the cases SWN cites, Plaintiffs do not seek a series of discrete payments that have been wrongfully withheld, they seek the value of all the oil and gas removed over a continuing period. This period cannot be broken into intervals.

In *Sabella v. Appalachian Development Corp.*, the Superior Court of Pennsylvania encountered a similar situation in which one individual removed oil and gas from another's subsurface estate. The defendants there appealed the trial court's ruling on the defendants' statute of limitations defense to the plaintiff's conversion and trespass claims. The appellate court noted "that the applicable two-year statutes of limitation" would either "facially ... bar all of [the plaintiff's claims]" or "would preclude damages for certain time periods encompassed by the lawsuit."

The *Sabella* court ultimately held that the statute of limitation was tolled for reasons not relevant to this matter. Yet *Sabella* suggests that in cases of a continuing conversion, as is the case here, the statute of limitations will only serve to reduce the damages the plaintiff is entitled to, rather than barring the claims completely. Under that logic, the continuing violation theory would apply in these circumstances where the alleged conversion is of a continuing nature.

*Sugar Bowl Ranch, LLC v. SWN Prod. Co., LLC*, No. 4:22-CV-00287, 2022 WL 4472452, at *5–6 (M.D. Pa. Sept. 26, 2022) (endnotes omitted).

Here, incorporating the precise language of the Court's opinion in *Sugar Bowl Ranch,* Plaintiffs clearly allege a continuous series of tortious acts rather than additional damages from a singular act:

Defendants are continuously removing [natural gas] from [Plaintiffs' land] without consent. The torts of conversion and trespass are closely related. Plaintiffs likely could bring a succession of conversion actions for each unit of [natural gas] illegally removed from their propert[y]. Nor can the damages be reasonably calculated in one conversion action, as Defendants continue to remove [natural] gas from Plaintiffs' properties.

*Id.*

Additionally, to the extent Defendant relies on *Cassel-Hess,* 44 A.3d 80, to support its argument that its fracking activities constitute a permanent trespass, that case is clearly distinguishable from the facts alleged here. In *Cassel-Hess*, a Plaintiff landowner sued her neighbor, alleging nuisance and trespass and seeking an injunction arising from her neighbor's creation of a mosquito-infested lake in connection with construction of an office building on the neighbor's property. *Id.* In finding that the creation of the lake constituted a permanent rather than continuing trespass, the Superior Court of Pennsylvania explained that:

16

> Thus, in this case, Appellant has admitted that: 1) the lake has been a permanent feature of the Appellees' land since 2005; 2) since 2005, the consequences of the alleged nuisance—*i.e.* the standing water and the mosquitos—have been unremitting and "will continue indefinitely"; and, 3) at the time the lake was formed, all damages the possessor of land suffered—or would thereafter suffer—for the nuisance could be predictably ascertained. *Sustrik,* 197 A.2d at 46–47 and *Graybill,* 593 A.2d at 1316–1317. The facts of this case thus demonstrate that, at the time of formation, the lake constituted a permanent change in Appellees' land.

*Cassel-Hess,* 44 A.3d at 88.

Unlike the lake in *Cassel-Hess*, here, Defendant is alleged to continue to actively exploit Plaintiffs' land through its intrusion and extraction of natural gas. Additionally, the extraction of natural gas from Defendant's well will not continue indefinitely, as there is no possibility that the natural gas reservoir is infinite in its supply. Finally, there is no possibility that "all damages the possessor of land suffered—or would thereafter suffer—for the nuisance could be predictably ascertained," *Cassel-Hess,* 44 A.3d at 88, since the extraction of natural gas in allegedly ongoing.[4]

---

[4] Defendant contends that Plaintiffs have conceded that "both past and future damages can be ascertained" because of their current and previous filings. (Doc. 23 at 19.) Plaintiffs state in their Amended Complaint that "Plaintiffs make demand for judgment in their favor in an amount equal to the value of all the natural gas extracted by SWN from under the land of the Plaintiffs to be extracted in the future." (Amend. Compl. at 7.) Plaintiffs do not specifically argue that they are able to currently ascertain the exact amount of damages for the continuing extraction of natural gas, nor does the Court find a mechanism by which all future damages could presently be ascertained. The Court finds that Plaintiffs' statements in their previous filings and their Amended Complaint do not amount to a concession that future damages can *presently* be ascertained, but rather that Plaintiffs are requesting that, if judgment is ultimately entered in their favor, that the Court will also award damages for future damages stemming from Defendant's extraction of natural gas from now until the disposition of this case.

Defendant also references *Graham Oil* to contend that Plaintiffs' allegations are more akin to a permanent trespass than continuing trespass claim. *See Graham Oil Co. v. BP Oil Co.,* 885 F. Supp. 716, 718 (W.D. Pa. 1994). Unlike in *Graham Oil*, where BP's depositing of hazardous substances on Graham's property "was a completed act at the time the underground storage tanks were removed," *id*. at 727, Plaintiffs in this case allege that "[D]efendant committed and continues to commit harm-causing actions" by continuing to extract natural gas from their property using proppants that remain under Plaintiffs' land. *Id*. at 726.

The Court finds that the relevant facts as alleged by Plaintiffs are more akin to those found in *Sugar Bowl Ranch, Kowalski,* and *Marcum v. Columbia Gas Transmission* than the cases affirmatively referenced by Defendant. *Sugar Bowl Ranch,* 2022 WL 4472452; *Kowalski,* 206 A.3d 1148; *Marcum v. Columbia Gas Transmission, LLC.*, 423 F. Supp. 3d 115, 127 (E.D. Pa. 2019) (finding that Defendant's trespass, resulting in sinkholes and mudslides that will likely occur in the future, constitute a continuing trespass). In all three of those cases, like here, the consequences of the alleged trespass or nuisance are and will continue to be relatively sporadic or circumstantial, and the extent of future damages cannot be "predictably ascertained." *Caruso-Long*, 243 A.3d at 239.

To the extent Defendant relies on the "rule of capture" to contend that Plaintiffs' Amended Complaint should be dismissed, their reliance is misplaced. In *Briggs I*, the Supreme Court of Pennsylvania determined that "a plaintiff alleging trespass by invasion of

18

property must aver something more than mere drainage of minerals from the subject

property, which by itself implicates the rule of capture [precluding liability]." *Briggs*, 224 A.3d

at 352. The Supreme Court of Pennsylvania was careful to specify that their application of

the rule of capture applied only "to hydraulic fracturing conducted *solely* within the driller's

property." *Id*. at 348 (emphasis added). Additionally, the Supreme Court of Pennsylvania

explained that, to avoid the application of the rule of capture, "the plaintiff must use at least

some words alleging physical intrusion – and not merely by inference based on generalized

characteristics of a particular drilling method." *Id*. at 352. Indeed, other district courts have

referenced *Briggs I* as holding that the rule of capture does not apply to drainage caused by

fracking on another's land. In *Golden Eagle Resources II, LLC, v. Rice Drilling D, LLC*, the

United States District Court for the Southern District of Ohio referenced *Briggs* I in

contending that the rule of capture does *not* apply when a physical intrusion has been

alleged:

> While it does not appear that courts have recognized a general abrogation of
> the rule of capture for all hydraulic fracturing cases (or, for that matter, that
> natural gas subject to fracking is non-fugacious), *see, e.g.*, *Kerns v.
> Chesapeake Expl., LLC*, 762 F. App'x 289, 291 (6th Cir. 2019) (discussing the
> rule of capture in relation to conflicting hydraulic fracturing operations in Ohio);
> *Briggs*, 224 A.3d at 348–49 ("[W]e reject as a matter of law the concept that
> the rule of capture is inapplicable to drilling and hydraulic fracturing ...."), the
> exceptional cases involving trespassory fracking present a different paradigm.
> The few courts that have discussed this issue have held that the rule of capture
> does not apply to drainage or seepage of natural gas caused by the injection
> of fracking fluids into another's property. *See Briggs*, 224 A.3d at 348–49
> (applying the rule of capture to hydraulic fracturing only where the fracking
> "occurs entirely within the developer's property"); *Briggs v. Sw. Energy Prod.
> Co.*, 245 A.3d 1050, 2020 WL 7233111, at *3 (Pa. Super. Ct. 2020) (same).

*Golden Eagle Res. II, LLC v. Rice Drilling D, LLC*, No. 2:22-CV-02374, 2023 WL 1927799, at *9 (S.D. Ohio Feb. 10, 2023).[5]

Plaintiffs expressly assert in their Amended Complaint that "propelling said fluids and proppants into the land of the Plaintiffs constituted a physical intrusion into Plaintiffs' land." (Amend. Compl. ¶ 12.8.) It would be anomalous to conclude that the rule of capture immunizes drillers from liability when their fracking activity is alleged to have intruded into others' land. *See Golden Eagle Res. II*, 2023 WL 1927799, at *9.[6] It would also be anomalous to hold that a Defendant who illegally fracks on another's land can simply escape liability for their continuing trespass via the extraction of natural gas because the initial fracking activity began earlier in time outside of the applicable statute of limitations. Defendant is alleged to continue to actively extract natural gas derived from the physical invasion of Plaintiffs' land by fracking through the injection of proppants onto their land. (*See* Amend. Compl. ¶ 11.) The Court finds that, for all the reasons explained, *supra*, the Pennsylvania Supreme Court would likely determine that such alleged activity constitutes a continuing trespass.

---

[5] *See also Finite Res., Ltd. v. DTE Methane Res., LLC,* 44 F.4th 680, 684 (7th Cir. 2022) (Citing *Briggs I* only to assert that the "rule of capture applies even where devices such as pumps are used to bring the mineral to the surface and thereby reduce the production of neighboring wells.")

[6] As alleged in Plaintiffs' Amended Complaint, the Second Restatement's proffered permanent trespass examples, such as simply "dig[ging] a well or mak[ing] some other excavation," is clearly distinct from fracking, which necessarily entails the permanent placement of proppants and other minerals into the ground to facilitate the extraction of natural gas.

Because the Court has concluded that Plaintiffs raise a claim of continuing trespass in their Amended Complaint, "the statute of limitations will only serve to reduce the damages the plaintiff is entitled to, rather than barring the claims completely." *Sugar Bowl Ranch, LLC,* 2022 WL 4472452, at *5–6 (endnotes omitted). Plaintiffs are permitted to move forward with their claims arising after December 8, 2020, the date after which the Court previously concluded that claim preclusion no longer bars Plaintiffs' claims.

## B. Claim Preclusion

Defendant contends that, if Plaintiffs' allegations are a permanent trespass rather than a continuing trespass, their Amended Complaint should be dismissed because it is barred by claim preclusion. (*See* Doc. 23 at 21-24.) The Court has concluded, *supra,* that Plaintiffs' allegations amount to that of a continuing trespass, rather than a permanent trespass. "[A] continuing trespass allows an injured party to bring actions for separate, independent injuries. *See [Miller v. Stroud Tp.,* 804 A.2d 749, 754 (Pa. Cmwlth. Ct. 2002).] Thus, [Plaintiffs are] entitled to bring an action in continuing trespass every time" Defendants extract natural gas from their land. *Kowalski,* 206 A.3d at 1167. As the Court has noted previously (Doc. 19 at 8), Pennsylvania law dictates that there are four conditions that must be met for *res judicata* to apply:

> To support a claim of res judicata the party asserting this defense must show a concurrence of four conditions: (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or sued. *Stevenson v. Silverman,* 417 Pa. 187, 208 A.2d 786, *cert. denied,* 382 U.S. 833, 86 S.Ct. 76, 15 L.Ed.2d 76 (1965). The essential inquiry is whether the ultimate and

controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights. *Hochman v. Mortgage Finance Corp.,* 289 Pa. 260, 137 A. 252 (1927).

*Callery v. Mun. Auth. of Blythe Twp.*, 243 A.2d 385, 387 (Pa. 1968).

Additionally, the Court has already determined that, if properly alleged in Plaintiffs'

Amended Complaint, allegations of a continuing trespass after December 8, 2020, could

survive a Motion to Dismiss:

> Four conditions must be met for res judicata to apply. (Doc. 14 at 15-17.) The difference in the time period covered by the present Complaint renders unsatisfied the first condition: that the two actions share an "identity of the thing sued upon." *Callery*, 243 A.2d at 387; *see also Gregory v. Chehi*, 843 F.2d 111, 116 (3d Cir. 1988) (applying Pennsylvania law). In *Briggs I*, the "thing sued upon," or the alleged wrongful act, was Defendant's past and continuing hydrofracking activity, up through the date of judgment in that case: December 8, 2020. In the present Complaint, the "thing sued upon" is Defendant's past and continuing hydrofracking activity, up through the date of judgment in this case, which is yet unknown but necessarily in the future. The present Complaint therefore "present[s] at least one new issue which could not possibly have been decided in the earlier action": Does Defendant's activity after December 8, 2020 constitute trespass or conversion? *Callery*, 243 A.2d at 388.
>
> In the Court 's view, this approach is the only logical one. As the Pennsylvania Supreme Court explained in *Haefele v. Davis,*
>
>> Because the tortious conduct of the appellants was continuous in nature, it would seem anomalous for us to hold that plaintiffs were bound to seek all their damages in the one action, when we see that even at the time of the decree in the first action, they were still, and for a while thereafter, victims of the same tortious conduct of which they were complaining.

399 Pa. 504, 511, 160 A.2d 711, 714 (1960). It makes no difference that here, Plaintiffs did not recover in their first action. In this case, Plaintiffs cannot be forever precluded from complaining about continuing conduct solely because

their initial lawsuit with respect to that conduct, occurring during an earlier time period, was unsuccessful.

> For all of these reasons, Plaintiffs' claims are precluded only to the extent they concern activity arising before or during the pendency of *Briggs I*. *Res judicata* does not apply to those claims regarding activity that succeeded *Briggs I*. Because Plaintiffs' Complaint asserts claims for past and continuing wrongful conduct without distinguishing between pre- and post-*Briggs* I, nor providing any details regarding timing, Plaintiffs' Complaint will be dismissed, but the Court will grant Plaintiffs leave to amend their Complaint to limit their claims temporally and assert claims concerning only that activity that could not have been the subject of *Briggs I*.

*Briggs v. Sw. Energy Prod. Co.*, No. 3:21-CV-520, 2023 WL 5310226, at *4 (M.D. Pa. Aug. 17, 2023).

In their Amended Complaint, Plaintiffs now distinguish between the activity that took place before and since December 9, 2020. (*See* Amend. Compl. ¶¶ 11, 13, 14, 15, 16, 18, 19.) Plaintiffs specify in their Amended Complaint that "[a]t all times since December 9, 2020, through the process known as hydraulic fracturing (fracking), SWN has been and continues to extract natural gas from the Marcellus Shale formation located under the Plaintiffs' land through the bore holes of said gas wells, including 'Folger 5H[,]' which is located within the above named Folger unit." (*Id*. at ¶ 11.) Plaintiffs additionally specify that "Plaintiffs make demand for judgment in their favor in an amount equal to the value of all the natural gas extracted by SWN from under the land of the Plaintiffs from December 9, 2020, to the date of judgment in this case." (*Id*. at 7.) The Court finds that these allegations in Plaintiffs' Amended Complaint allege a new issue and activity from those alleged before and

during the pendency of *Briggs I*—the extraction of natural gas from Plaintiffs' land *after* December 8, 2020—to survive Defendant's Motion to Dismiss.

Because the Court has determined, *supra*, that Plaintiffs sufficiently allege a continuing trespass, they continue to be alleged victims of intrusive conduct that results in natural gas being extracted from their land. *Haefele*, 160 A.2d at 714. Therefore, Plaintiffs' Amended Complaint (Doc. 21) alleging a continuing trespass and conversion is not barred by claim preclusion for acts alleged to have taken place after December 8, 2020.

### III. CONCLUSION

The Court will deny Defendant's Motion to Dismiss (Doc. 22) for the reasons explained above. An appropriate order will follow.

Robert D. Mariani
United States District Judge