THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ADAM BRIGGS, PAULA BRIGGS, | : | |
| his wife, JOSHUA BRIGGS, and | : | |
| SARAH BRIGGS, | : | |
| | : | |
| Plaintiffs, | : | 3:21-CV-520 |
| | : | (JUDGE MARIANI) |
| v. | : | |
| | : | |
| SOUTHWESTERN ENERGY | : | |
| PRODUCTION COMPANY, a/k/a SWN | : | |
| PRODUCTION COMPANY, LLC, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

Presently before the Court is Defendant Southwestern Energy Production

Company's, now known as SWN Production Company, LLC, ("Defendant" or "SWN") motion

for summary judgment. (Doc. 51). For the reasons that follow, Defendant's motion will be

granted.

### I.    INTRODUCTION

In June of 2013, the Defendant, SWN, engaged for one week in fracking on land

adjacent to land then owned by the Plaintiffs' mother/mother-in law. The land on which the

wellbore was located was not owned by the Plaintiffs or their predecessor-in-title. The land

owned by Plaintiffs' predecessor-in-title, Mary Constance Horn, was the subject of an oil

and gas lease granted to Elexco Land Services, Inc. and then, through a series of lease

assignments, the lessee rights were conveyed to SWN for an 11.07-acre portion of Horn's property. At the time of the fracking by SWN in June of 2013, the assignment of the lease for that parcel to SWN was in full force and effect.

Plaintiffs claim that as part of the fracking process undertaken in June of 2013 by SWN on the land adjacent to the land owned by Plaintiffs' predecessor-in-title (Horn), SWN injected proppants into and underneath the surface of the 11.07-acre parcel of land, the lease for which was assigned to SWN at the relevant time, and conveyed to Plaintiffs on December 4, 2013. Plaintiffs assert that the injection by SWN of the proppants, designed to keep the fissures created by the fracking process open so as to allow the gas to naturally flow unimpeded for capture, constitutes an unlawful and continuing trespass upon their property.

Assuming that such proppants were injected by SWN in 2013, and further assuming that they remain underneath the surface of Plaintiffs' land, Plaintiffs' claims for trespass and conversion must be rejected. SWN's actions were authorized and privileged by the oil and gas lease in effect on the 11.07-acre parcel through July 18, 2013, between SWN and Mary Constance Horn; the state law rule of capture would bar Plaintiffs' claim in any event; and further, even if unprivileged by the lease in effect through July 18, 2013, any proppants remaining under the land of the Plaintiffs would constitute a permanent trespass under Pennsylvania law and, accordingly, Plaintiffs' claims are time barred.

## II.    PROCEDURAL HISTORY

On November 5, 2015, Plaintiffs filed their first complaint against Defendant in the

Court of Common Pleas of Susquehanna County ("*Briggs I*"). (Doc. 22-1). Plaintiffs, who

own an 11.07-acre parcel of land in Susquehanna County, alleged that SWN was extracting

natural gas on an adjacent parcel of land from the subsurface Marcellus Shale formation.

(*Id*. at ¶¶ 3-6, 8). Plaintiffs claimed that SWN was extracting natural gas from underneath

Plaintiffs' land by drilling on a natural gas well called "SWN Folger Gas Unit" placed on

Defendant's own land. (*Id*. at ¶¶ 7, 9, 11). In their complaint in *Briggs I*, Plaintiffs did not

allege any specific intrusion of their land through hydraulic fracking. (*See generally* Doc.

22-1).

On August 8, 2017, the Court of Common Pleas determined that because "the gas

was removed by Defendant through legal and permissible means, Plaintiffs cannot sustain

their trespass claim, and by extension, they cannot sustain their claims for conversion or

punitive damages," thereby granting Defendant's Motion for Summary Judgment. *Briggs v.

Southwestern Energy Prod. Co.,* No. 2015-1253, 2017 WL 10605836, at \*5 (Pa. Com. Pl.

Civil Div. 2017). On appeal, the Superior Court of Pennsylvania reversed the judgment of

the Court of Common Pleas, holding that:

> it is unclear from the record before us whether Southwestern's hydraulic
> fracturing operations resulted in a subsurface trespass to Appellants' property.
> There does not appear to be any evidence, or even an estimate, as to how far
> the subsurface fractures extend from each of the wellbore on Southwestern's
> lease. However, we conclude that Appellants' allegations are sufficient to raise

an issue as to whether there has been a trespass, and thus, entry of judgment in favor of Southwestern was premature.

*Briggs v. Southwestern Energy Prod. Co.*, 184 A.3d 153, 164 (Pa. Super. Ct. 2018).

After receiving these diverging opinions as to SWN's Motion for Summary Judgment, the Supreme Court of Pennsylvania ruled on *Briggs I*. *See Briggs v. Southwestern Energy Prod. Co.,* 224 A.3d 334 (Pa. 2020). The Supreme Court of Pennsylvania vacated the Superior Court's judgment, finding that because Plaintiffs did not allege any specific physical invasion of their land through fracking, the Superior Court "erred to the extent it assumed that either (a) the use of hydraulic fracturing alters [the rule of capture that precludes liability in some instances], or (b) where hydraulic fracturing is utilized, such physical invasion is a necessary precondition in all cases for drainage to occur from underneath another property." *Id*. at 352. Upon remand, on December 8, 2020, the Superior Court affirmed the Court of Common Plea's order granting summary judgment to SWN. *See Briggs v. Southwestern Energy Prod. Co.*, 245 A.3d 1050 (Pa. Super. Ct. 2020).

On January 12, 2021, Plaintiffs filed a new complaint in the Court of Common Pleas of Susquehanna County ("*Briggs II*"). (Doc. 1-2). This new complaint again brought suit against SWN for trespass, conversion, and punitive damages. (*Id*. at ¶¶ 14-21). Plaintiffs alleged, as they did before, that SWN was extracting natural gas from under Plaintiffs' land using a well SWN drilled as part of the "SWN Folger Gas Unit" on SWN's adjacently owned parcel of land. (*Id*. at ¶¶ 6-8, 11).

4

Distinct from their *Briggs I* Complaint, Plaintiffs described the drilling and hydraulic fracturing processes that they claim Defendant employed to extract natural gas from the Marcellus Shale formation under Plaintiffs' land. (*Id*. at ¶ 11). Additionally, Plaintiffs alleged that Defendant used hydraulic fracturing to actively inject fluids and proppants into Plaintiffs' land to extract natural gas, thereby constituting a physical intrusion that caused natural gas to be removed from Plaintiffs' land and flow into Defendant's well. (*Id*. at ¶ 12). Plaintiffs sought damages "in an amount equal to the value of all the natural gas extracted by SWN from under the land of the Plaintiffs to the date of judgment in this case," damages "in an amount equal to the value of all the natural gas extracted by SWN from under the land of the Plaintiffs to be extracted in the future," and punitive damages. (*Id*.).

On March 22, 2021, Defendant removed Plaintiffs' second action to this Court. (Doc 1). On the same day, Defendant moved to dismiss Plaintiffs' Complaint, alleging that it was barred by claim preclusion/res judicata. (Doc. 2). On August 16, 2023, after considering briefing from the parties and a Report and Recommendation from Magistrate Judge Carlson, this Court granted SWN's Motion to Dismiss, (Doc. 2), finding that claim preclusion applied to activities that took place before or during the pendency of *Briggs I*. *See Briggs v. Southwestern Energy Prod. Co.*, 3:21-CV-520, 2023 WL 5310226, at \*4 (M.D. Pa. Aug. 17, 2023); (Doc. 19). The Court dismissed the complaint without prejudice and granted Plaintiffs leave to amend their complaint to assert claims alleged to have arisen after the time period encompassed within *Briggs I*. *Id.* The Court determined that the time period encompassed

5

within *Briggs I* and barred by claim preclusion was all times prior to December 9, 2020, the day after the final judgment in that case. *Id.* at \*3.

On August 24, 2023, Plaintiffs filed their Amended Complaint, (Doc. 21), which Defendant again moved to dismiss. (Doc. 22). Specifically, Defendant claimed that Plaintiffs Amended Complaint: (1) failed to allege a continuing trespass; and (2) is barred due to *res judicata* and the applicable statute of limitations. (*Id.*). On January 3, 2024, this Court denied Defendant's motion to dismiss. (Docs. 26-27).

After engaging in discovery, SWN moved for summary judgment on December 6, 2024. (Doc. 51). Plaintiffs filed their opposition brief and papers, belatedly, on January 6, 2025. (Docs. 54-55). Defendant submitted its reply brief on January 21, 2025. (Doc. 56). Following the completion of briefing, Plaintiffs filed the following documents without leave of Court on February 4 and 5, 2025: (1) Sur-Reply brief and a single page attached, purporting to be an affidavit of their expert, Michael Casto; (2) a Request seeking to replace its opposition brief with a new brief; and (3) yet another Sur-Reply brief. (Docs. 57-59). On February 7, 2025, Defendant filed a Motion to Strike the aforementioned documents. (Doc. 60). Finally, on February 14, 2025, Plaintiffs filed a Motion for Leave to File Amended Pleadings and Brief. (Doc. 62). In that motion, Plaintiffs did not seek to amend their pleading, but rather sought to replace their opposition brief with a new brief addressing certain arguments in Defendant's motion for summary judgment which Plaintiffs did not

6

address in their prior brief. (*Id.*). On March 3, 2025, Defendant filed its brief in opposition to Plaintiffs' Motion for Leave to File Amended Pleadings and Brief. (Doc. 67).

## III.   STATEMENT OF FACTS

On December 6, 2024, Defendant filed a Statement of Material Facts ("SOMF"). (Doc. 53). Plaintiffs filed their Answer to Defendant's SOMF on January 6, 2025, largely admitting to the contents of the SOMF. (Doc. 55-1). The following are the undisputed facts, unless otherwise noted:

Mary Constance Horn ("Horn") was the mother of Plaintiffs Adam Briggs, Joshua Briggs and Sarah Briggs and the mother-in-law of Adam Briggs' wife, Plaintiff Paula Briggs (collectively, the "Plaintiffs"). (SOMF at ¶ 1). Horn died on October 2, 2013. (*Id.* at ¶ 2).

Prior to her death, Horn was the sole owner of a parcel of land located in Harford Township, Susquehanna County, Pennsylvania, which is identified by the Susquehanna County Tax records as parcel number 147.00-2,011.00 (the "Property"). (*Id.* at ¶ 3). The Property consists of approximately 70 acres in total and is identified by the color green on the map from the Susquehanna County on-line parcel viewer. (*Id.* at ¶ 4). On July 18, 2008, Horn, as the "Lessor," entered into a "Paid Up Oil and Gas Lease" with Elexco Land Services, Inc. ("Elexco") as the "Lessee" with respect to the Property. (*Id.* at ¶ 5). A "Memorandum of Lease" confirming that the Lease was entered into between Horn and Elexco regarding the Property was publicly recorded on August 15, 2008, at Instrument No.

200812345 with the Susquehanna Recorder of Deeds. (*Id.* at ¶ 6). As consideration for the Lease, Horn received an up-front payment of $203,582.50 from Elexco. (*Id.* at ¶ 7).

Pursuant to the terms of Section 1 of the Lease, Horn granted to Elexco the right to explore for, develop, produce, and market oil and natural gas from beneath the surface of the entire Property. (*Id.* at ¶ 8). The Property was specifically identified as one of the "Additional Leaseholds" that Horn leased to Elexco and thus subject to the Lease. (*Id.* at ¶ 9). Horn specifically agreed in Section 1 of the Lease that Elexco, as the Lessee, would have the following rights of access to the entire Property in order to conduct operations for the exploration and production of natural gas:

> The rights granted to Lessee hereunder **shall include the right of ingress and egress on the leased premises** or lands pooled or unitized therewith, **along with such rights as may be reasonably necessary to conduct operations for exploring, developing, producing, storing and marketing Oil and Gas Substances, including, but not limited to, geophysical operations, the drilling of wells**, and the construction and use of roads, pipelines, tanks, water wells, disposal wells, injection wells, pits, electric and telephone lines, fiber optics and other communications facilities, power stations, and other facilities deemed necessary by Lessee to **explore, discover, produce**, store (including storage in subsurface strata), treat and/or transport Oil and Gas Substances and water produced from the leased premises or other lands that share central facilities and are jointly operated with the leased premises for gathering, treating, compression and water disposal. Lessee may use in such operations, free of cost, any oil, gas, water and/or other substances produced from the leased premises, except water from Lessor's wells or ponds. **In exploring, developing, producing or marketing from the leased premises or lands pooled or unitized therewith, the rights granted herein shall apply (a) to the entire leased premises, notwithstanding any partial release or other partial termination of the lease**; and (b) to any other lands in which Lessor now or hereafter has authority to grant such rights in the vicinity of the leased premises or lands pooled or unitized therewith.

(*Id.* at ¶ 10) (emphasis supplied).  The primary term of the Lease was for five years running

from July 18, 2008, through July 18, 2013.  (*Id.* at ¶ 11).

Section 2 of the Lease provided that the term would be extended beyond the initial

five-year term, "for as long thereafter as oil and gas or other substances covered hereby are

produced in paying quantities from the leased premises."  (*Id.* at ¶ 12).  Plaintiff Adam

Briggs admitted that the five-year term of the Lease could be extended beyond July 18,

2013, if natural gas was produced from the Property:

Q:     Okay.  And so do you agree that the term of the lease could be extended
       pursuant to paragraph 2 if oil or gas were produced from the parcel?

A:     Mm-Hmm.

Q:     You have to say yes or no, sir.  I apologize.  I know it's…

A:     Yes.

Q:     She can't take down…

A:     Yes.  I'm sorry.

Q:     So the original term of this ran from July 18, 2008 through July 18, 2013,
       right?

A:     Yes.

Q:     And could have been extended if natural gas was being produced?

A:     Yes.

(*Id.* at ¶ 13).  Horn and Elexco agreed that they could assign their respective interests under

the Lease.  (*Id.* at ¶ 14).  The Lease states that it would be binding upon Horn's and

9

Elexco's respective "heirs, devisees, executors, administrators, successors and assigns." (*Id.* at ¶ 15).

Elexco assigned all of its rights to the Property under the Lease to SWN on May 12, 2009, by operation of an "Assignment of Oil and Gas Lease" that was publicly recorded on May 22, 2009, at Instrument No. 200908551 with the Susquehanna Recorder of Deeds. (*Id.* at ¶ 16). On December 15, 2010, SWN assigned all of its rights to the Property under the Lease to Cabot Oil & Gas Corporation ("Cabot") by operation of an "Assignment of Oil and Gas Lease" that was publicly recorded on January 19, 2011, at Instrument No 201101650 with the Susquehanna Recorder of Deeds. (*Id.* at ¶ 17). On November 15, 2012, Cabot made an assignment back of all of its rights and interests under the Lease to some but not all of the Property to SWN by operation of a "Partial Assignment of Oil and Gas Leases" that was publicly recorded on November 26, 2012, at Instrument No. 201214573 with the Susquehanna Recorder of Deeds (the "Partial Assignment"). (*Id.* at ¶ 18).

Pursuant to the Partial Assignment, Cabot specifically assigned and conveyed all of its rights and interests under the Lease to an 11.07-acre portion of the 70-acre Property (the "11.07 Acre Property Sub-Portion") back to SWN while Cabot retained its interest in the remaining approximate 60 acres of the Property under the Lease. (*Id.* at ¶ 19). Specifically, the 11.07 Acre Property Sub-Portion that Cabot assigned to SWN under the Lease by operation of the Partial Assignment was located in the northernmost part of the Property and was identified in "Exhibit B2" that was attached to and incorporated into the Partial

Assignment from Cabot to SWN. (*Id.* at ¶ 20). By operation of the Partial Assignment from Cabot, SWN was assigned all of the rights, title, and interests as the Lessee under the Lease to the 11.07 Acre Property Sub-Portion of the Property effective as of November 15, 2012. (*Id.* at ¶ 21). Cabot retained the remaining southern portion of the Property, consisting of approximately 60 acres, as identified in "Exhibit B2" that was attached to and incorporated into the Partial Assignment. (*Id.* at ¶ 22).

On February 28, 2013, Horn executed a "Ratification of Oil and Gas Lease" that was publicly recorded on January 16, 2014, at Instrument No. 201400650 with the Susquehanna Recorder of Deeds (the "Ratification"). (*Id.* at ¶ 23). Pursuant to the Ratification, Horn ratified and confirmed the terms of the Lease with respect to the Property. (*Id.* at ¶ 24). Plaintiffs' claims in this case solely concern and arise out of the 11.07 Acre Property Sub-Portion of the Property. (*Id.* at ¶ 25).

On March 27, 2013, SWN commenced drilling operations of a horizontal natural gas well known as "Folger 5H Well" on lands adjacent and to the west of the Property. (*Id.* at ¶ 26). Plaintiffs admit that the Folger 5H wellbore is located on land not owned by the Plaintiffs. (Doc. 55-1 at ¶¶ 28-29). There is no dispute that Plaintiffs did not own the land on which the Folger 5H wellbore is located and was drilled. (*Id.*). At the time SWN drilled the Folger 5H Well in March 2013, the entire Property, including the 11.07 Acre Property Sub-Portion, was owned by Horn and not the Plaintiffs. (Doc. 53 at ¶ 27). It is undisputed

that SWN did not drill the Folger 5H Well through any portions of the property.[1]  (*Id.* at ¶ 28).

The Folger 5H Well was drilled and located externally and to the north and west of the

Property as demonstrated in Exhibit M depicting the Folger 5H Well with the colored red line



---

[1]        Plaintiffs denied this statement of fact "as stated."  However, that is not a proper response, as set forth in the Case Management Order.  (*See* Doc. 38 at 2 n.1) (**"No response by the non-moving party to movant's statement of material fact which purports to be a denial of an asserted statement of material that uses the term "denied as stated" is permitted**.) (emphasis in original).  Moreover, Plaintiffs failed to properly support their purported denials with references to record evidence in violation of Local Rule 56.1.  This fact will be deemed admitted.  Further, Plaintiffs' insufficient response is contradicted by their admission to Defendant's SMOF at ¶ 35 that "Plaintiffs do not assert that SWN engaged in any alleged activity beneath the 11.07 Acre Property Sub-Portion after it fracked the Folger 5H Well in June 2013."

and the entire Property shaded in the color orange.[2]  (*Id.* at ¶ 29).

SWN completed its fracking activities associated with its drilling of the Folger 5H Well between June 2, 2013, and June 9, 2013.  (*Id.* at ¶ 30).  SWN completed the fracking of the Folger 5H Well on June 9, 2013, which was before the Lease expired on July 18, 2013, and before the death of Horn on October 2, 2013.  (*Id.* at ¶ 31).  SWN conducted the fracking of the Folger 5H Well only between June 2, 2013, and June 9, 2013.  (*Id.* at ¶ 32).

It is undisputed that SWN did not conduct fracking activities for the Folger 5H Well after June 9, 2013, and therefore, the alleged injection of proppants did not occur after June 9, 2013.  (*Id.* at ¶ 33).  Plaintiffs admit that SWN completed the fracking of the Folger 5H Well in "June 2013."  (*Id.* at ¶ 34).  The Plaintiffs do not assert that SWN engaged in any alleged activity beneath the 11.07 Acre Property Sub-Portion after it fracked the Folger 5H Well in June 2013.  (*Id.* at ¶ 35).  Plaintiffs do not assert that SWN engaged in any activity since December 9, 2020, other than to continue passively collecting natural gas through the Folger 5H Well.[3]  (*Id.* at ¶ 36).  SWN commenced with the production of paying quantities of natural gas from the Folger 5H Well on July 9, 2013, which was before the July 18, 2013, end of the initial term of the Lease and while the Property was owned by Horn.  (*Id.* at ¶ 37).

---

[2]    Plaintiffs denied this statement of fact "as stated."  However, that is not a proper response, as set forth in the Case Management Order.  (*See* Doc. 38 at 2 n.1) ("**No response by the non-moving party to movant's statement of material fact which purports to be a denial of an asserted statement of material that uses the term "denied as stated" is permitted**.) (emphasis in original).  Moreover, Plaintiffs failed to properly support their purported denials with references to record evidence in violation of Local Rule 56.1.  This fact will be deemed admitted.

[3]    Plaintiffs denied this statement of fact but failed to provide any references to record evidence in violation of Local Rule 56.1.  This fact will be deemed admitted.

It is undisputed that the Folger 5H Well has produced paying quantities of natural gas from July 9, 2013, through the present.  (*Id.* at ¶ 38).

SWN's drilling and fracking of the Folger 5H Well between June 2-9, 2013, was completed when the Property was owned by Horn and not the Plaintiffs.  (*Id.* at ¶ 39). Plaintiff Adam Briggs admitted that SWN's June 2-9, 2013, fracking activities for the Folger 5H Well occurred while the term of the Lease was in effect:

> Q:    Do you agree that Folger 5H was fracked during the month of June of 2013?
>
> A:    I do believe it was.
>
> Q:    All right.  And you previously testified that that occurred during that month, have you not?
>
> A:    I think so.
>
> Q:    All right.  And the lease that you have before you runs from July 18 of 2008 to July 18 of 2013, correct?
>
> A:    July 18, 2013?
>
> Q:    Yes, sir.
>
> A:    Okay.
>
> Q:    So that fracking you've alleged occurred during the term of the lease, correct?
>
> A:    Correct.

(*Id.* at ¶ 40).  Plaintiff Adam Briggs admitted he previously testified that if SWN's June 2013 fracking activities had occurred beneath the 11.07 Acre Property Sub-Portion, the fracking would have been authorized under the terms of the Lease.  (*Id.* at ¶ 41).  Plaintiff Adam

Briggs admitted that SWN had the right under the Lease to conduct oil and gas operations under the 11.07 Acre Property-Sub Portion of the Property. (*Id.* at ¶ 42). Cabot and/or its subsidiary Coterra Energy, Inc. drilled a natural gas well named the "D. Pritchard Unit No. 2 Well" within the southern portion of the Property and has paid royalties pursuant to the terms of the Lease first to Horn and then to the Plaintiffs for the extraction of natural gas since 2013. (*Id.* at ¶ 43).

Pursuant to the terms of Horn's will, the entire Property was conveyed by Horn's estate to the Plaintiffs (as tenants in common) by operation of a December 4, 2013, Deed that was publicly recorded on December 31, 2013, as Instrument No. 201317052 with the Susquehanna Recorder of Deeds (the "Deed"). (*Id.* at ¶ 44). The Deed stated that the conveyance of the Property to the Plaintiffs was subject to the Lease that Horn had originally entered into with Elexco:

> ALSO TOGETHER with all the rights of any nature of the Grantors (including, without limitation, their rights to reserve rents, royalties and any and all other payments) in and to the certain **Oil and Gas Lease recorded in Susquehanna County at Instrument Number 2000812345** [*i.e.* the Memorandum of Lease], by and between M. Constance Horn a/k/a/ Constance Horn, widow, as Lessor, and Elexco Land Services, Inc., as Lessee, **as it may have been amended <u>or subsequently assigned</u>**, by Assignment which is recorded in the Office of Recorder of Deeds in and for Susquehanna County as Instrument Number 200908551 and by Oil Lease Amendment as recorded in Susquehanna County Instrument Number 201310421.

(*Id.* at ¶ 45) (emphasis supplied). The reference in the Deed to "Instrument Number 200812345" was to the Memorandum of Lease (Ex. F) between Horn and Elexco regarding the Lease. (*Id.* at ¶ 46).

The conveyance of the Property to the Plaintiffs by operation of the Deed occurred on or about December 4, 2013, which was over five months after SWN already completed the drilling and fracking of the Folger 5H Well and commenced with the production of natural gas from the Folger 5H Well on July 9, 2013. (*Id.* at ¶ 47). Plaintiffs held no ownership rights or interest in the Property, including the 11.07 Acre Property Sub-Portion, before it was conveyed to them in December 2013 by operation of the Deed following the death of Horn on October 2, 2013.[4] (*Id.* at ¶ 48).

Plaintiffs assert that SWN's June 2-9, 2013, fracking of just the Folger 5H Well constituted the alleged act of trespass with respect to just the 11.07 Acre Property Sub-Portion of the Property. (*Id.* at ¶ 49). Specifically, Plaintiffs claim that when SWN conducted the fracking of the Folger 5H Well, it allegedly injected "fluids and proppants" into the 11.07 Acre Property Sub-Portion. (*Id.* at ¶ 50). Plaintiffs claim that the "proppants" SWN allegedly propelled into the 11.07 Acre Property Sub-Portion have remained beneath it ever since. (*Id.* at ¶ 51).

Plaintiffs do not claim that SWN engaged in any other act or alleged trespass other than the June 2-9, 2013, fracking of the Folger 5H Well. (*Id.* at ¶ 52). Plaintiffs admit that the Folger 5H Well was drilled adjacent to the west and outside of the 11.07 Acre Property Sub-Portion of the Property and that SWN did not drill the Folger 5H Well through any

---

4    Plaintiffs deny this statement, stating it is a conclusion of a law as to which no response is required. (Doc. 55-1 at ¶ 48).

portion of the Property.[5]  (*Id.* at ¶ 53).  Plaintiffs do not claim that SWN actually drilled the

Folger 5H Well bore into or underneath the 11.07 Acre Property Sub-Portion or any other

part of their Property.  (*Id.* at ¶ 54).  The Plaintiffs assert their trespass and conversion

claims against SWN only with respect to the 11.07 Acre Property Sub-Portion of the

Property and do not make any claims with respect to the remaining southern part of the

Property that was retained and drilled by Cabot.  (*Id.* at ¶ 55).

Plaintiffs claim that SWN's alleged trespass occurred in June 2013.  (*Id.* at ¶ 56).

Plaintiff Adam Briggs admitted that the sole alleged act of trespass by SWN was the

fracking of the Folger 5H Well that SWN completed between June 2-9, 2013:

> Q:   Okay.  And in this case, the act-of-trespassing claim occurred between June
>      2 and June 9 of 2013, based on the fracking activities, correct?
>
> A:   Correct.

(*Id.* at ¶ 57).  Plaintiff Adam Briggs admitted that he knew that the alleged fracking trespass

occurred in June of 2013:

> Q:   Now, in this case do you agree the fracking that you've alleged occurred with
>      the Folger 5H took place in June of 2013?
>
> A:   Yes.
>
> Q:   Okay.  You knew that from before?

---

[5]      Plaintiffs deny this statement "as stated."  However, that is not a proper response, as set forth in the Case Management Order.  (*See* Doc. 38 at 2 n.1) ("**No response by the non-moving party to movant's statement of material fact which purports to be a denial of an asserted statement of material fact that uses the term "denied as stated" is permitted**.) (emphasis in original).  Moreover, Plaintiffs failed to properly support their purported denials with references to record evidence in violation of Local Rule 56.1.  This fact will be deemed admitted.

A:     Yes.

Q:     Okay.  And it was started and commenced in June of 2013, right?

A      Yes.

(*Id.* at ¶ 58).  Plaintiff Adams Briggs admitted that he believed as of January 15, 2015, that

SWN had already engaged in the alleged trespass and extraction of natural gas from

beneath the 11.07 Acre Property Sub-Portion:

Q:     But am I correct, based on the date of this letter, that you believed as of
       [January 15, 2015] gas was being extracted from the 11.07 acres that we've
       been discussing?

A:     Yes.

Q:     And you believed it was being extracted by Southwest through the Folger 5H?

A:     Yes.

(*Id.* at ¶ 59).

Plaintiff Joshua Briggs admitted that he knew since 2013 of the claim that SWN was

allegedly extracting gas from the 11.07 Acre Property Sub-Portion of the Property.  (*Id.* at ¶

60).  Plaintiff Joshua Briggs specifically admitted that the Plaintiffs knew as of 2015, if not

earlier, that they believed they had claims and causes of action against SWN:

Q:     So you also knew if—as of 2015, if not earlier, that Plaintiffs had a potential
       claim against Southwest Energy.

A:     Yes.

(*Id.* at ¶ 61). Plaintiff Sarah Briggs similarly admitted that she has known since at least

January of 2015 of the Plaintiffs' claims against SWN for its alleged trespass and alleged

extraction of natural gas from beneath the 11.07 Acre Property Sub-Portion of the Property:

> Q:    I'm going to ask [the court reporter] to bring up Exhibit 16 from a prior
>       deposition. Now, Sarah, were you aware in January of 2015 that this letter
>       had been sent on behalf of the Plaintiffs to Southwest Energy?
>
> A:    Yes.
>
> Q:    Okay. So you've know at least from that time of a potential claim involving
>       your interest in the 11 acres?
>
> A:    Yes, I have.
>
> Q:    Okay. And particularly you've known since then of the claim by Plaintiffs that
>       they claim gas is being extracted from underneath the 11-acre parcel?
>
> A:    Yes.

(*Id.* at ¶ 62).

On March 2, 2015, Plaintiffs' attorney sent a letter on behalf of the Plaintiffs asserting

that SWN's Folger Wells were extracting natural gas from beneath the 11.07 Acre Property

Sub-Portion of the Property as of that date and demanded the payment of royalties. (*Id.* at

¶ 63). Plaintiff Adam Briggs admitted that he and the Plaintiffs knew of their claims against

SWN as of March 2, 2015, if not earlier:

> Q:    Sir, Exhibit 18 is a letter that appears to have been sent by your attorney, Mr.
>       Kelly, to Southwest on March 2, 2015. You see that?
>
> A:    Yes.

> Q:     And based on your prior testimony, you already believed as of January of that
>          year that Southwest may be taking gas from under the 11.07 acres, right?
>
> A:     Yes.
>
> Q:     So you already held that belief going into March of that year, right?
>
> A:     Yes.

(*Id.* at ¶ 64).  On June 2, 2015, Mr. Kelly sent another letter to SWN on behalf of the

Plaintiffs stating that the Plaintiffs had been "advised by persons knowledgeable in the

production of natural gas" that SWN had allegedly been extracting gas from the 11.07 Acre

Property Sub-Portion of the Property.  (*Id.* at ¶ 65).  Plaintiffs' June 2, 2015, letter asserted

that SWN's alleged extraction of gas from beneath the 11.07 Acre Property Sub-Portion as

of that date already constituted an alleged trespass under Pennsylvania law.  (*Id.* at ¶ 66).

Plaintiffs claim that when SWN conducted the fracking of the Folger 5H Well, it

allegedly injected "fluids and proppants" into the 11.07 Acre Property Sub-Portion.  (*Id.* at ¶

67).  Plaintiffs assert that the "proppants" SWN allegedly propelled into the 11.07 Acre

Property Sub-Portion have remained beneath it even since.  (*Id.* at ¶ 68).  Plaintiffs have

come forward with no evidence that SWN allegedly injected proppants beneath the 11.07

Acre Property Sub-Portion of the Property.[6]  (*Id.* at ¶ 69).  Plaintiff have come forward with

---

[6]     Plaintiffs "object to the timing of this allegation" on the basis that their expert report is not due until
45 days after resolution of Defendant's motion for summary judgment.  (Doc. 55-1 at ¶ 69).  This is a not a
proper response and will be deemed admitted.  Moreover, it is Plaintiffs themselves who filed an
unopposed motion to extend the deadline to submit expert reports.  (Doc. 49).  The Court adopted Plaintiffs'
motion, which provided that "Plaintiffs shall submit their expert report(s) on a date no later than 45 days
after the date of the court's resolution of such dispositive motion(s) as are filed by the defendant in this
case."  (Doc. 50 at ¶ 1).

no evidence that SWN's alleged proppants have remained beneath the 11.07 Acre Property

Sub-Portion of the Property.[7]  (*Id.* at ¶ 70).  Plaintiffs admit that they possess no evidence

that SWN's fracking activities actually trespassed into or under their Property or the 11.07

Acre Property Sub-Portion.[8]  (*Id.* at ¶ 71).

Plaintiff Adam Briggs admitted that the Plaintiffs have no evidence that SWN

conducted fracking activities beneath their Property or the 11.07 Acre Property Sub-Portion:

> Q:    And what in particular in this case are you relying on to say that actual
>       fracking activities went beneath your property?  Just asking if you have
>       anything.
>
> A:    Do I have anything for what?
>
> Q:    Factually that supports that allegation?
>
> A:    Probably not.

(*Id.* at ¶ 72).[9]  Plaintiff Adam Briggs also admitted that Plaintiffs have no evidence that

SWN's alleged fracking proppants remain under the 11.07 Acre Property Sub-Portion of the

Property:

---

[7]      Plaintiffs "object to the timing of this allegation." (Doc. 55-1 at ¶ 70).  This is not a proper response and will be deemed admitted.  As noted, Plaintiffs filed an unopposed motion to extend the deadline to submit expert reports.  (Doc. 49).  The Court adopted Plaintiffs' motion, which provided that "Plaintiffs shall submit their expert report(s) on a date no later than 45 days after the date of the court's resolution of such dispositive motion(s) as are filed by the defendant in this case." (Doc. 50 at ¶ 1).

[8]      Plaintiffs denied this statement, noting that in *Briggs I*, they filed an expert report from Professor John Wang "sustaining said claims." (Doc. 55-1 at ¶ 71).  Further, they direct the Court to the preliminary report of Casto Petroleum Engineering.  (*Id.*).

[9]      Plaintiffs do not provide any responses to Defendant's SOMF at ¶¶ 72-76.  (*See* Doc. 55-1).  Accordingly, these statements of facts are deemed admitted.

Q:      All right.  The plaintiffs in this case are alleging that the proppants used during fracking remain under the 11.07 acres; is that correct?

A:      Yes.

Q:      And what factual information are you aware of that supports that allegation?

A:      I don't know.

Q:      Have you reviewed any records to support that allegation?

A:      No.

Q:      Are you aware of any records that support—

A:      No.

Q       --such an allegation? You have to let me finish the question.  You can go ahead and answer.

A:      No.

(*Id.* at ¶ 73).

Plaintiff Joshua Briggs admitted that he had no evidence to support the allegations in paragraph 12.10 of the Amended Complaint that SWN's alleged fracking proppants allegedly remain under the 11.07 Acre Property Sub-Portion of the Property.  (*Id.* at ¶ 74). Plaintiff Sarah Briggs similarly admitted that she had no evidence to support the allegations in paragraph 12.10 of the Amended Complaint that SWN's alleged fracking proppants allegedly remain under the 11.07 Acre Property Sub-Portion of the Property.  (*Id.* at ¶ 75). Plaintiff Sarah Briggs further admitted that she has no evidence to support the allegations of

paragraph 12.10 of the Amended Complaint that SWN is extracting gas from beneath the 11.07 Acre Property Sub-Portion of the Property.  (*Id.* at ¶ 76).

## IV.    STANDARD OF REVIEW

Summary judgment "is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. AMR*, 549 F.3d 219, 223 (3d Cir. 2008).  "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law."  *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).  Thus, through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact.  *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).  Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists.  *Anderson*, 477 U.S. at 248.  "A party asserting that a fact cannot be or is

genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

## V.    ANALYSIS

### A. Plaintiffs' Opposition to Defendant's Motion for Summary Judgment.

Defendant seeks summary judgment on numerous grounds.[10] (Doc. 52). First, Defendant claims that the Lease precludes Plaintiffs' claims for trespass and conversion. (*Id.* at 18-28). Second, Defendant argues that Plaintiffs' claims are barred by this Court's August 16, 2023, Order. (*Id.* at 29-32). Third, Defendant claims that Plaintiffs admit that they cannot sustain their burden of proof. (*Id.* at 32-36). Fourth, Defendant asserts that Plaintiffs cannot establish a continuing trespass. (*Id.* at 36-45). Fifth, Defendant argues that Plaintiff cannot sustain their burden of proof for punitive damages. (*Id.* at 45-46).

Plaintiffs oppose Defendant's motion.[11] (Docs. 54-55). Specifically, Plaintiffs claim that: (1) Defendant repudiated the lease; and (2) Plaintiffs have proof of continuing trespass

---

[10]    This is a diversity action, 28 U.S.C. § 1332, and thus the Court must apply the substantive law of the forum state—here, Pennsylvania. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

[11]    On February 14, 2025—nearly six weeks after filing their belated opposition papers—Plaintiffs filed a Motion for Leave to File Amended Pleadings and Brief. (Doc. 62). In that motion, Plaintiffs appear to ask the Court to consider its amended brief and do not formally seek to amend the pleadings. Defendant opposes Plaintiffs' motion. (Doc. 67). The Court will grant Plaintiffs' Motion for Leave to File Amended

and conversion. (Doc. 55). Plaintiffs do not address Defendant's other arguments in support of their motion for summary judgment. Indeed, in their opposition papers, Plaintiffs do not cite a single case to support their continuing trespass and conversion claims. (Doc. 55 at 7-8). Rather, Plaintiffs spend seven of the eight pages discussing irrelevant matters such as contract repudiation. (Id. at 1-7). Plaintiffs have chosen to proceed in tort, not in contract, and nowhere in Plaintiffs' brief in opposition do they cite to a single tort case. The entirety of Plaintiffs' opposition brief discussing continuing trespass and conversion is as follows:

> The other claim for entitlement to summary judgment by SWN relates to "factual proof" that any trespass and conversion has ever taken place under the subject land by SWN, is continuing to take place and is going to continue to an indefinite time in the future.

> As with many other cases (medical malpractice for easy example) the proof of the above requires the opinion of one or more experts knowledgeable in the practices and procedures used by "natural gas industry" especially as it relates to the hydrofracturing process involved in extracting natural gas from the Marcellus Shale strata thousands of feet below the surface of the earth from which all natural gas is being extracted from under Susquehanna County and most of Northeastern Pennsylvania by SWN and other similar companies.

> Plaintiffs are well aware of the necessity for such expert testimony which is forthcoming in the form an extensive report sustaining the plaintiffs' claim of continuing trespass and conversion; and same is forthcoming even in advance of the date required under the Joint Case Management Plan. ECF 35, 38, 50.

> SWN knows full well that, in this case, expert reports are not due until a date 45 days after the resolution of the present motion. ECF 50.

---

Pleadings and Brief. Nevertheless, consideration of this amended brief still fails to raise a genuine dispute of material fact, as discussed more fully herein.

As such, it would not be fair to have the present motion decided in the absence of an opportunity of the plaintiffs to submit an expert report not due until after the present motion has been resolved by the Court.

That said, plaintiffs have obtained a preliminary report from their retained natural gas expert, Casto Engineering, specifically addressing the issues of "lack of proof" raised by SWN in their present motion. Said preliminary report addresses the subjects in sufficient form to defeat SWN's current motion. Said report and supporting documents are attached to plaintiffs answer to SWN's motion for summary judgment.

(Doc. 55 at 7-8).

Plaintiffs submit eleven exhibits in opposition to Defendant's motion. (Docs. 54-1, 54-2). These exhibits generally consist of a series of letters and maps exchanged by Plaintiffs' counsel and SWN's counsel. (Docs. 54-1 at 1-25). These letters appear to confirm that there was no lease on the 11.07 Acre Property Sub-Portion following the Lease's expiration on July 18, 2013. (*Id.*). The other exhibits submitted by Plaintiffs appear to be portions of the complaint in *Briggs I*, (Doc. 54-1 at 26-27), as well as portions of SWN's answer in *Briggs I*. (*Id.* at 28-32). Plaintiffs did not cite to any "particular parts of materials in record," and failed to submit any deposition testimony, admissions, responses to interrogatories, or the like. Fed. R. Civ. P. 56(c)(1)(A).

Plaintiffs have also submitted a preliminary expert report by Wes Casto, P.E. of Casto Petroleum Engineering (the "Casto Report"). (Doc. 54-2). It is notable that, on November 27, 2024, it is Plaintiffs who filed a Motion for Extension of Time to Submit Expert Reports. (Doc. 49). The Court granted Plaintiffs' motion and adopted its proposed order that "Plaintiffs shall submit their expert report(s) on a date no later than 45 days after the

date of this court's resolution of such dispositive motion(s) as are filed by the defendant in

this case." (Doc. 50 at ¶ 1). When Plaintiffs belatedly filed their opposition to Defendant's

motion for summary judgment, they submitted the Casto Report.[12] (Doc. 54-2). The Casto

Report is not sworn to by Mr. Casto. (*Id.*). However, Plaintiffs submitted two sur-reply

briefs, without leave of the Court and in violation of Local Rule 7.7, to which they attached a

single page.[13] (Doc. 57-1). The page purports to be a "Sworn Affidavit/Verification" of the

Casto Report. (*See Id.*) ("I, Michael Weston Casto, P.E., being duly sworn according to law

do hereby depose and say as follows…"). The Court need not consider the unsworn Casto

Report submitted in opposition to Defendant's motion for summary judgment. *See Fowle v.

C & C Cola*, 868 F.2d 59, 67 (3d Cir. 1989) ("The substance of this report was not sworn to

by the alleged expert. Therefore, the purported expert's report is not competent to be

considered on a motion for summary judgment.") (citing *Adickes v. S.H. Kress & Co.*, 398

U.S. 144, 158 n.17, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)); *see also Hatcher v. SCM Grp.

N. Am., Inc.*, 167 F. Supp. 3d 719, 724-25 (E.D. Pa. 2016) ("There are two problems with

Clauser's report. First, this report is not competent for consideration at summary judgment

---

[12]    Rule 56(d) of the Federal Rules of Civil Procedure provides the procedure Plaintiffs should have
employed if they truly needed additional discovery prior to summary judgment. "When a party opposing
summary judgment believes that s/he needs additional time for discovery, Rule 56(d) specifies the
procedure to be followed." *Pennsylvania Dep't of Pub. Welfare v. Sebelius*, 674 F.3d 139, 157 (3d Cir.
2012) (internal citation and quotation marks omitted). Plaintiffs did not avail themselves to this procedure,
even after Defendant made them aware of this rule in its reply brief.

[13]    Local Rule 7.7 provides "[a] brief in reply to matters argued in a brief in opposition may be filed by
the moving party within fourteen (14) days after service of the brief in opposition. No further briefs may be
filed without leave of court."

because it provides neither an affidavit nor an acceptable alternative 'subscribed in proper

form as true under penalty of perjury to substitute for an affidavit.'") (quoting Fed. R. Civ. P.

56(c)).  Plaintiffs did not correct their error for over a month.

Nonetheless, the Court will consider the Casto Report on summary judgment.[14]

*Fowle*, 868 F.2d at 67 ("While evidence should not be excluded on summary judgment on

hypertechnical grounds, we are swayed in this case by the fact that defendants raised this

issue in the district court, and plaintiff did nothing to correct the error before the court.

Therefore, we will decide this case without reference to the unsworn expert's report.").

Nevertheless, giving Plaintiffs the benefit of every reasonable inference, the Casto Report is

conclusory, speculative, and lacks factual and foundational support and is thus insufficient

to defeat SWN's motion for summary judgment.  And, as noted, Plaintiffs' answer to

Defendant's statement of material facts establishes that Plaintiffs agree with nearly every

factual statement SWN assert entitle it to summary judgment on Plaintiffs' conversion and

trespass claims.  (Doc. 55-1).

---

[14]     Accordingly, the Court will deny Defendant's motion to strike Documents 57, 58, and 59.  (Doc. 60).
*See Styer v. Frito-Lay, Inc.*, Civil No. 1:13-CV-833, 2015 WL 999122, at *2 (M.D. Pa. Mar. 6, 2015)
("Recognizing that briefs are, by their nature, argumentative and sometimes contentious filings, it is
generally held that a brief—as opposed to other forms of pleading—typically will not be considered a
'pleading' which is properly the subject of a motion to strike.") (internal citation and quotation marks
omitted).  But, as discussed more fully below, consideration of these procedurally improper documents still
fails to a raise a genuine dispute of material facts and SWN is entitled to judgment as a matter of law.

## B. The Lease Precludes Plaintiffs' Trespass and Conversion Claims.

Defendant seeks summary judgment on Plaintiffs' trespass and conversions claims,

arguing it is entitled to summary judgment because the Lease authorized its conduct. (Doc.

52). Specifically, Defendant argues that "Plaintiffs' trespass and conversion claims that

SWN's alleged fracking activities led to the injection of proppants beneath the subject 11.07

Acre Property Sub-Portion fail as a matter of Pennsylvania law because SWN had the

express contractual right of access to engage in such alleged conduct as the Lessee under

Section 1 of the lease." (*Id.* at 21). In opposition, Plaintiffs claim that Defendant repudiated

the lease and thus, "there was no Lease on the subject land making any extraction for

natural gas from thereunder acts of trespass and conversion." (Doc. 55). This Court has

already determined that the facts alleged by Plaintiffs in the Amended Complaint plausibly

establish claims for continuing trespass and conversion, to the extent they alleged an

continuing trespass and conversion following the conclusion of *Briggs I* in December 2020.

(Doc. 26). Whether Plaintiffs have sustained their burden on summary judgment is another

matter.

As discussed more fully below, because Plaintiffs utterly failed to come forward with

any evidence that SWN physically intruded upon the 11.07 Acre Property Sub-Portion by

injecting proppants beneath the surface which remain to this day and facilitate the extraction

of natural gas from the 11.07 Acre Property Sub-Portion, their continuing trespass claim

must fail. Furthermore, even if Plaintiffs had come forward with evidence to raise a genuine

dispute of material fact as to the trespass claim, it would nevertheless fail because SWN was privileged to do so under the terms of the assigned Lease on the 11.07 Acre Property Sub-Portion, which was undisputedly in effect from July 18, 2008 through July 18, 2013. Plaintiffs have come forward with no evidence: (1) that SWN conducted fracking activities for the Folger 5H Well beneath their 11.07 Acre Property Sub-Portion; (2) that SWN injected proppants beneath the 11.07 Acre Property Sub-Portion; and (3) if SWN had injected proppants, the proppants remain there and hold open cracks in the shale formation, which allow gas from beneath the 11.07 Acre Property Sub-Portion to flow to SWN's Folger 5H Well. Moreover, even if these claims were supported by the evidence, Plaintiffs' claims nevertheless fail because SWN's alleged fracking activities beneath the 11.07 Acre Property Sub-Portion undisputedly occurred between June 2-9, 2013, and were authorized under the terms of the Lease on the 11.07 Acre Property Sub-Portion which was still in effect at the time SWN's fracked the Folger 5H Well.

"In Pennsylvania, a trespass occurs when a person who is not privileged to do so intrudes upon land in possession of another, whether willfully or by mistake." [15] *Briggs v. Southwestern Energy Prod. Co.*, 657 Pa. 38, 58, 224 A.3d 334 (2020) (citations omitted). "Conduct which would otherwise constitute a trespass is not a trespass if it is privileged." Restatement (Second) of Torts § 158, cmt. e (1965). One type of privilege arises when the

---

[15]    "The presence of a privilege is not an affirmative defense, rather, the absence of such a privilege is an element of the cause of action which must be pleaded and proven by the plaintiff." *Bahleda v. Hankison Corp.*, 228 Pa. Super. 153, 156, 323 A.2d 121 (1974) (citing *Capecci v. Liberty Corp.*, 406 Pa. 197, 202, 176 A.2d 664 (1962)).

right of entry has been granted pursuant to a contract, such as a lease. *Kennedy v. Consol. Energy, Inc.*, 116 A.3d 626, 635-36 (Pa. Super. Ct. 2015). "It is well-settled law that in order to establish a claim for trespass, a plaintiff must prove an intentional entrance upon land in the possession of another without a privilege to do so." *Id.* at 636 (citations omitted).

"In order to maintain a trespass action, a plaintiff must have had the right to exclusive use and possession of the property at issue." *Graham Oil Co. v. B.P. Oil. Co.*, 885 F. Supp. 716, 725 (W.D. Pa. 1994) (citing *Northeast Women's Ctr., Inc. v. McMonagle*, 670 F. Supp. 1300, 1311 (E.D. Pa. 1987)). In *Graham*, the defendant leased property from the plaintiff/owner that was used as a gasoline station and service center. *Id.* at 718. After the defendant notified the plaintiff that it did not intend to renew the lease, subsurface contamination on the plaintiff's property was discovered. The defendant moved to dismiss the trespass/continuing trespass claim, "on the basis that it was legally in possession of the leased property when it was allegedly contaminated, and there was, therefore, no unprivileged intentional intrusion onto land in possession of another." *Id.* at 719. Defendant further sought dismissal, maintaining that plaintiff "cannot maintain an action for continuing trespass because the alleged contamination constitutes a permanent injury and not a continuing trespass." *Id.* The *Graham* court dismissed plaintiff's trespass claim, concluding that the plaintiff "surrendered exclusive use and possession of the property when it leased the property to" the defendant. *Id.* at 725. Accordingly, the plaintiff could not "maintain an action in trespass based upon [the defendant's] alleged activities during the term of the

lease." *Id.* "It is undisputed that the contamination of the property occurred during the lease term, and therefore, [plaintiff] should not be permitted to recover in its action for trespass against [the defendant]." *Id.* Thus, when defendant "allegedly contaminated the leased property, it was lawfully authorized to be in the possession of the premises." *Id.*

Similarly, in *Roth v. Cabot Oil & Gas Corp.*, 919 F. Supp. 2d 476 (M.D. Pa. 2013), the court applied *Graham* to dismiss plaintiff's trespass claim. In *Roth*, the defendant gas company entered into a lease with the plaintiffs/owners to obtain the right to drill and extract natural gas from the plaintiffs' property. *Id.* at 482. The *Roth* plaintiffs lived on the land and granted defendant only limited access to the property by operation of the lease. *Id.* at 483. After defendant commenced drilling on the property, the groundwater supply had diminished in quality and plaintiffs brought suit alleging trespass and other claims. *Id.* at 484. Applying *Graham*, the *Roth* court dismissed the trespass claim, concluding that even though the defendant was granted only limited access to the property (as opposed to the exclusive access granted in *Graham*), "[t]he crux of *Graham* is that where a lessee is 'authorized to be on the premises' or 'authorized to be in possession of the premises,' a trespass action simply cannot lie against the lessee who then lawfully enters the property." *Id.* at 493 (quoting *Graham*, 885 F. Supp. at 725).

Likewise, in *Valley Rod & Gun Club v. Chesapeake Appalachia, LLC*, No. 13-cv-0725, 2013 WL 2393003 (M.D. Pa. June 3, 2013), the court applied *Graham* and *Roth* and dismissed plaintiff's trespass claim, concluding that "Defendants were privileged to drill and

operate wells on the leased lands, as well as to install and use roads on the surface of the lands." *Id.* at *6. Because the terms of the lease authorized the defendant to be on the premises, the Court found that plaintiffs could not "demonstrate that Defendants' entry upon its land was without privilege, a necessary element of its trespass claim." *Id.*; *see also Gedekoh v. Peoples Natural Gas Co.*, 183 Pa. Super. 511, 514, 133 A.2d 283 (1957) ("One cannot be guilty of a trespass by illegal entry if his wrong is committed subsequent to a rightful entry where such entry was by permission of the owner. Where the alleged trespasser has an easement over the land his entry is privileged. A right of entry constitutes an absolute defense to an action in trespass."). The same logic applies here.

Viewing the facts in the light most favorable to Plaintiffs, there is no genuine dispute of material fact as to whether Defendant was privileged to enter under the terms of the Lease on the 11.07 Acre Property Sub-Portion. Plaintiffs failed to adduce any evidence to raise a genuine dispute of material fact that SWN, without privilege to do so, trespassed into their subsurface estate and converted the natural gas. Accordingly, Plaintiffs' trespass and conversion claims fail as a matter of law. Because Defendant satisfied its initial burden demonstrating the absence of a genuine dispute of material fact, it was Plaintiffs burden as the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial" and do something more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 583 (1986). Plaintiffs failed to do so.

It is undisputed that the initial term of the Lease on the 11.07 Acre Property Sub-Portion ran from July 18, 2008, until July 18, 2013. (SOMF at ¶ 11). It is further undisputed that, as of November 14, 2012, Cabot assigned all its rights to the 11.07 Acre Property Sub-Potion under the lease to SWN by operation of the Partial Assignment. (*Id.* at ¶¶ 19-21). The undisputed terms of the assigned Lease granted SWN the express right of access to the 11.07 Acre Property Sub-Portion to conduct operations for the exploration, development, and production of natural gas. (*Id.* at ¶ 10). It is also undisputed that pursuant to Section 1 of the assigned Lease, SWN was granted the right to access the 11.07 Property Sub-Portion and to conduct operations to "explore, discover, and produce" natural gas, including the drilling of natural gas wells. (*Id.*). Indeed, Plaintiff Adam Briggs admitted such in his deposition. (*Id.* at ¶ 40) (Q: So the fracking you've alleged occurred during the term of the lease, correct?  A:  Correct).  And it is undisputed that Plaintiffs' claim in this case solely concern and arise out of the 11.07 Acre Property Sub-Portion of the Property. (*Id.* at ¶ 25).

It is undisputed that the only fracking Plaintiffs complain of took place between June 2, 2013, and June 9, 2013. (*Id.* at ¶¶ 30-32, 35). It is undisputed that SWN did not conduct fracking activities for the Folger 5H Well after June 9, 2013, and therefore, the alleged injection of proppants did not occur after June 9, 2013. (*Id.* at ¶ 33). It is further undisputed that SWN's fracking of the Folger 5H Well was before the Lease expired on July 18, 2013, and before the death of Horn on October 2, 2013. (*Id.* at ¶ 31). It is undisputed that SWN

did not drill the Folger 5H Well through any portions of the 11.07 Acre Property Sub-Portion of the Property.  (*Id.* at ¶ 28).

It is further undisputed that Plaintiffs do not claim that SWN engaged in any other act or alleged trespass other than the June 2-9, 2013, fracking of the Folger 5H Well.  (*Id.* at ¶¶ 49, 52).  Moreover, Plaintiffs admit that the Folger 5H Well was drilled adjacent to the west and outside of the 11.07 Acre Property Sub-Portion of the Property and that SWN did not drill the Folger 5H Well through any portion of their property.  (*Id.* at ¶ 53).  It is undisputed that Plaintiffs have come forward with no evidence that SWN allegedly injected proppants beneath the 11.07 Acre Property Sub-Portion of the Property.  (*Id.* at ¶ 69).  Plaintiffs have come forward with no evidence that SWN's alleged proppants have remained beneath the 11.07 Acre Property Sub-Portion of the Property.  (*Id.* at ¶ 70).

In addition, it is undisputed that Mary Constance Horn, Plaintiffs' now deceased mother or mother-in-law, signed a Ratification of Oil and Gas Lease on February 28, 2013.  (*Id.* at ¶¶ at 23-24).  Pursuant to the Ratification, Horn ratified and confirmed the terms of the Lease with respect to the Property.  (*Id.*).  Plaintiffs' claims in this case solely concern and arise out of the 11.07 Acre Property Sub-Portion of the Property.  (*Id.* at ¶ 25).  Accordingly, viewing the facts in the light most favorable to the Plaintiffs, their trespass claim fails as a matter of law because it is undisputed that SWN had the express contractual right to engage in the alleged fracking activities as the Lessee pursuant to Section 1 of the Lease.  (*Id.* at ¶¶ 10-11).

Defendant also seeks summary judgment on Plaintiffs' conversion claim, claiming

that the Lease precludes this claim.  Under Pennsylvania law, conversion is defined as "the

deprivation of another's right of property in, or use of possession of, a chattel, or other

interference therewith, without the owner's consent and without lawful justification."

*Stevenson v. Econ. Bank of Ambridge*, 413 Pa. 442, 451, 197 A.2d 721 (1964) (citations

omitted).  "The torts of conversion and trespass are closely related."  *Sugar Bowl Ranch,*

*LLC v. SWN Prod. Co., LLC*, No. 4:22-CV-00287, 2022 WL 4472452, at *5 (M.D. Pa. Sept.

26, 2022).

In addition, "a claim of conversion cannot be sustained in the face of lawful

justification on the part of the asserted tortfeasor."  *Pioneer Com. Funding Corp. v. Am. Fin.*

*Mortg. Corp.*, 579 Pa. 275, 289, 855 A.2d 818 (2004); *see also Wilson v. Synders Bros.,*

*Inc.*, 232 A.3d 872, 876-77 (Pa. Super. Ct. 2020) ("Necessarily, the trial court dismissed the

trespass and conversion counts because they were resolved by the determination that the

subject leases were valid.").  "That a defendant acted without lawful justification is an

element of a prima facie case of conversion, on which a plaintiff bears the burden of proof; it

is not an affirmative defense."  *Schulze v. Legg Mason Wood Walker, Inc.,* 865 F. Supp.

277, 284 (W.D. Pa. 1994).

As discussed, it is undisputed that the Lease on the 11.07 Acre Property Sub-Portion

terminated in July of 2013.  (SOMF at ¶ 31).  According to SWN, since the parties'

relationship was governed by a contract—the Lease—to the extent that Plaintiffs attempt to

bring a conversion claim, it must necessarily fail. SWN's reasoning is two-fold. First, SWN claims that "[g]iven that Plaintiffs' entitlement to the alleged gas they claim was converted by SWN is subject to the terms of the Lease, SWN is entitled to judgment as a matter of law on Plaintiffs' conversion claims." (Doc. 52 at 25). In the alternative, SWN asserts that "[a]ssuming *arguendo* that the proppants remained, SWN's contractual rights under the assigned Lease are fatal to Plaintiffs' claims because Section 2 of the Lease directs that its initial term would be extended beyond July 18, 2013, 'for as long thereafter as oil and gas or other substances covered hereby are producing in paying quantities from the leased premises.'" (*Id.* at 25-26). The Court declines to accept SWN's alternative argument principally because it is not necessary to the resolution of SWN's Motion, for the reasons set forth in this opinion.

Viewing the facts in the light most favorable to the Plaintiffs, as the Court must, there is simply no genuine dispute of material fact as to whether SWN trespassed and subsequently converted—and continues to convert—Plaintiffs gas. There is no evidence that SWN physically invaded Plaintiffs' property by the injection of proppants and fracking fluids beneath Plaintiffs' property to facilitate the extraction of natural gas. (SOMF at ¶¶ 69-70, 72-76). Indeed, nothing in the record—other than the unsworn and wholly conclusory Casto Report—lends any support to Plaintiffs' trespass and conversion claims. *See Safa v. City of Philadelphia*, Civil Action No. 2:13-cv-5007, 2015 WL 3444264, at *14 (E.D. Pa. May 29, 2015) (granting defendant's motion for summary judgment on conversion claim, and

noting "[w]e will not consider Plaintiffs' conclusory legal allegations as substantive evidence."). Thus, Plaintiffs' trespass and conversion claims fail as a matter of law.[16]

In addition, the rule of capture as announced in *Briggs I* would nevertheless preclude Plaintiffs' claims because there are no facts from which a reasonable jury could find for Plaintiffs on their trespass claims and, absent a physical invasion/trespass, the rule of capture applies to defeat Plaintiffs' claims. *See Briggs I*, 657 Pa. at 69 ("***the rule of capture remains extant in Pennsylvania, and developers who use hydraulic fracturing may rely on pressure differentials to drain oil and gas from under another's property, at least in the absence of a physical invasion***.") (emphasis added). Moreover, because any alleged trespass would be a permanent (as opposed to continuing) trespass, the trespass and conversion claim must fail because claim preclusion/res judicata precludes those claims and the statute of limitations has long expired.

## C. Plaintiffs Fail to Establish a Continuing Trespass.

Defendant next seeks summary judgment because Plaintiffs have failed to raise a genuine dispute of material fact as to their continuing trespass claim. The Court has already discussed in an opinion denying Defendant's motion to dismiss that Plaintiffs have sufficiently alleged facts giving rise to a claim for continuing trespass. (Doc. 26). It does not

---

[16]    The Court need not decide whether the gist of the action doctrine precludes Plaintiffs' trespass and conversion claims, because there are simply no facts which from a reasonable jury could find for Plaintiffs on these claims. For similar reasons, the Court need not address SWN's argument that Plaintiffs cannot prove punitive damages.

follow, however, that Plaintiffs have sustained their burden on summary judgment,

especially when no party at the motion dismiss stage argued that, at the time of the alleged

physical invasion, SWN was contractually privileged to do so by operation of the Lease.[17]

Even assuming, *arguendo*, that the Lease did not preclude Plaintiffs' trespass and

conversions claims, these claims nevertheless fail because Plaintiffs have come forward

with no evidence that SWN's conduct amounted to a trespass (whether continuing or

permanent). Indeed, Plaintiffs admit to nearly all of Defendant's statements of material facts

and fail to direct the Court to any facts supporting their continuing trespass claim. (Doc. 55-

1).

The Restatement (Second) of Torts § 161, cmt. b (1965) defines a "continuing

trespass" as follows:

> The actor's failure to remove from land in the possession of another a structure,
> chattel, or other thing which he has tortiously erected or placed on the land constitutes
> a continuing trespass for the entire time during which the thing is wrongfully on the
> land and . . . confers on the possessor of the land an option to maintain a succession

---

[17] The Court flatly rejects Plaintiffs' argument that because the Court denied SWN's motion to dismiss Plaintiffs' continuing trespass and conversion claims, that "ended the matter with respect to this case" and "is just as binding hare [sic] as it was in the motion to dismiss stage." (Doc. 63 at 8). That is not the law. "[W]hile at the motion-to-dismiss stage, a court must accept allegations of a plaintiff's complaint as true, summary judgment is essentially put up or shut up time for the nonmoving party who must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *T.R. v. Sch. Dist. of Philadelphia*, 458 F. Supp. 3d 274, 294 (E.D. Pa. 2020) (internal citation and quotation marks omitted).

In addition, it is highly likely that had either SWN or Plaintiffs raised the issue of the assigned Lease on the 11.07 Acre Property Sub-Portion at any stage in these proceedings prior to summary judgment, the Court would likely have granted SWN's motion to dismiss Plaintiffs' Amended Complaint. (*Compare* Amended Complaint at ¶ 7) ("Said land is not subject to any natural gas lease under the terms of which SWN or any other entity is entitled to extract natural gas from under the land."), *with* (SOMF at ¶¶ 10-12) (undisputed that assigned Lease was in effect at time of the fracking).

of actions based on the theory of continuing trespass or to treat the continuance of the thing on the land as an aggravation of the original trespass.

The Restatement (Second) of Torts § 162, cmt. e (1965) further distinguishes a continuing

trespass from a permanent trespass:

> A continuing trespass must be distinguished from a trespass which permanently changes the physical condition of the land.  Thus, if one, without a privilege to do so, enters land of which another is in possession and destroys or removes a structure standing upon the land, or digs a well or makes some other excavation, or removes earth or some other substance from the land, the fact that the harm thus occasioned on the land is a continuing harm does not subject the actor to liability for a continuing trespass.  Since his conduct has once and for all produced a permanent injury to the land, the possessor's right is a full redress in a single action for trespass, and a subsequent transferee of the land, as such, acquires no cause of action for the alteration of the condition of the land.

Courts in Pennsylvania have described the standard for determining whether a

trespass is continuing or permanent:

> Actions for trespass and actions for nuisance are both subject to the two-year statute of limitations.  However, when the statute of limitations begins to run for causes of action for trespass and nuisance depends on whether the wrong is permanent or continuing.  A permanent trespass or nuisance, as the name suggest, is one that effects a permanent change in the condition of the land, and in such a case, the statute of limitations begins to run at the time of the original trespass.  A permanent trespass or nuisance entitles the possessor of the land to institute a single action for all past and future damages.

> Conversely, in the case of a continuing trespass or nuisance it is impossible to know exactly how many incidents of trespass will occur in the future, or the severity of the damage that may be caused.  For that reason, a party aggrieved by a continuing trespass or nuisance can maintain a succession of actions based on continuing infractions or the aggravation of the original offense.

> To determine whether a trespass or nuisance constitutes a permanent or continuing cause of action, courts must consider a variety of factors, including:  1) the character of the structure or thing which produces injury; 2) whether the consequences of the

[trespass/nuisance] will continue indefinitely; and 3) whether the past and future damages may be predictably ascertained.

*Caruso-Long v. Reccek*, 243 A.3d 234, 239 (Pa. Super. Ct. 2020); *see also Sustrick v. Jones & Laughlin Steel Corp.*, 413 Pa. 324, 197 A.2d 44, 46-47 (1964). "In order to maintain a claim for continuing trespass, a plaintiff must plead that the defendant committed and continues to commit harm-causing actions, not merely that the harm continues to result from actions which have ceased." *Graham*, 885 F. Supp. at 726. "Drawing all reasonable inferences from the facts alleged in Graham's amended complaint, the Court concludes that the contamination was a completed act at the time the underground storage tanks were removed and that the contamination is, therefore, a permanent injury rather than a continuing trespass." *Id.* at 727.

Applying the first factor—the character of the structure of thing which produces the injury—it is apparent that to the extent Plaintiffs allege a continuing trespass those claims must fail because the acts they complain of both lack support in the summary judgment record and, even if they were supported, would constitute a permanent trespass. *See Russell v. Chesapeake Appalachia, LLC*, No. 4:14-CV-00148, 2018 WL 6804764, at *3 (M.D. Pa. Dec. 27, 2018) ("Here, it is undisputed that Plaintiffs' injuries can be traced to either the natural gas wells themselves or Chesapeake's operations arising from its lawful drilling at those wells. When Chesapeake's physical wells were constructed, they became a permanent feature of the land."). Although *Russell* involved a continuing nuisance claim—as opposed to a continuing trespass claim—the same test and logic applies in this matter. It

is undisputed that SWN possessed the right to lawfully engage in its fracking activities

pursuant to the Lease.  It is further undisputed that Plaintiffs have presented no evidence of

any fracking activities by SWN after June 9, 2013, the undisputed day the fracking

operations ceased.  Thus, the character of the structure or thing which allegedly produced

Plaintiffs' injury is a permanent feature on the land.  Although the Court previously

concluded that Plaintiffs have alleged "the continuous intrusion of proppants on the land,"

(Doc. 26 at 11), that finding was based on an interpretation of the Amended Complaint and

the Second Restatement of Torts contention that "a continuing trespass is committed by the

continued presence of a structure, chattel, or other thing which the actor ***has tortiously***

***placed there,*** whether or not the actor has the ability to remove it.  Restatement (Second)

of Torts § 161(a)." *Caruso-Long*, 243 A.3d at 239 (emphasis added).  Because it is

undisputed that SWN was privileged to enter Plaintiffs' property pursuant to the Lease, there

has been no tortious placement of proppants or fracking fluid on Plaintiffs land.  Moreover,

there is simply no support in the summary judgment record that any trespass has occurred.

Second, the Court must consider whether the consequences of the trespass (i.e.,

Plaintiffs' alleged injuries), will continue indefinitely.  The harm Plaintiffs complain of—the

alleged trespass by physical invasion of proppants on their land—is not supported by any

evidence and, even if it were, "arises as a necessary corollary to [SWN's] lawful natural gas

extraction operation." *Russell*, 2018 WL 6804764, at *3.  While the Court previously

determined at the pleading stage that it cannot be said that the consequences of the

trespass will continue indefinitely, nothing in the summary judgment record supports this finding. Therefore, the second factor weighs in favor of concluding that Plaintiffs, at most, have alleged (but failed to prove) a permanent trespass.

Finally, the Court must consider whether past and future damages may be predictably ascertained. The Court finds this factor does not support Plaintiffs' continuing trespass claim on the summary judgment record. Accordingly, on this record, the Court predicts that the Supreme Court of Pennsylvania would determine that at most, the alleged activity would constitute a permanent trespass.[18] *See Tri-Cnty. Bus. Campus Joint Venture v. Clow Corp.*, 792 F. Supp. 984, 996 (E.D. Pa. 1992) ("[T]he critical distinction is whether the injury is permanent and effects a permanent change in the condition of the land, or whether the action concerns separate and recurrent injuries which cannot be ascertained or estimated so as to be brought in a single action.").

At bottom, the injury Plaintiffs complain of as trespass, if any, occurred during the Lease term and was a permanent injury to the land. *See Graham*, 885 F. Supp. at 726 ("BP's depositing of hazardous substances on Graham's property does not constitute a continuing trespass because the contamination was a completed act at the time Graham took possession of the property. The act of contamination was 'completed' on January 27, 1992, when BP had three 10,000 gallon underground storage tanks removed from the

---

[18]    The Court is tasked with predicting how the Supreme Court of Pennsylvania would rule on these issues. *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378-79 (3d Cir. 1990).

leased premises.  Because BP's lease did not expire until November 30, 1992, the act of contamination had been completed approximately ten months prior to Graham's repossession of the property.").  "In order to maintain a claim for continuing trespass, a plaintiff must plead [and subsequently prove] that the defendant committed and continues to commit harm-causing actions, not merely that the harm continues to result from actions which have ceased." *Id.*

It is undisputed that SWN's fracking activities ceased on June 9, 2013, while the Lease was still in effect and, accordingly, was a privileged entry.  (SOMF at ¶¶ 30-35).  It is further undisputed that Plaintiffs do not claim that SWN engaged in any other act or alleged trespass other than the June 2-9, 2013, fracking of the Folger 5H Well.  (*Id.* at ¶ 52).  Moreover, Plaintiffs admit that the Folger 5H Well was drilled adjacent to the west and outside of the 11.07 Acre Property Sub-Portion of the Property and that SWN did not drill the Folger 5H Well through any portion of their property.  (*Id.* at ¶ 53).  It is undisputed that Plaintiffs have come forward with no evidence that SWN allegedly injected proppants beneath the 11.07 Acre Property Sub-Portion of the Property.  (*Id.* at ¶ 69).  Plaintiffs have come forward with no evidence that SWN's alleged proppants have remained beneath the 11.07 Acre Property Sub-Portion of the Property.  (*Id.* at ¶ 70).

There are no facts or evidence before the Court from which a reasonable jury could infer SWN continues to commit harm causing action, as opposed to a past harm that results from actions which have already ceased and were nevertheless privileged.  Accordingly,

giving Plaintiffs the benefit of every reasonable inference, the undisputed record before the Court does not establish a genuine dispute of material fact and Plaintiffs' continuing trespass claims fail as a matter of law.  Because Defendant satisfied its initial burden demonstrating the absence of a genuine issue of material fact, it was Plaintiffs' burden as the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial" and do something more than "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus.*, 475 U.S. at 586-87.  Plaintiffs failed to do so.  The only possible evidentiary support for Plaintiffs' claims is the unsworn and conclusory Casto Report.  Even considering the Casto Report, that report is not sufficient to raise a genuine dispute of material fact as to either the trespass or conversion claims.

The Casto Report provides "preliminary opinions with regard to a potential trespass and conversion of the oil and gas minerals" underlying the 11.07 Acre Sub-Portion Property. (Doc. 54-2 at 2).  As part of his "preliminary analysis," Casto reviewed and relied on the following documents:  (1) the August 24, 2023 Amended Complaint; (2) map supplied by SWN in discovery showing distance from Subject Well to Subject Property; (3) Folger 5H Completion Report and Perforation Record; (4) Map of Folger Unit and wells surrounding units and wells as supplied by SWN; and (5) Map showing drainage area of Folger Unit and affected area of Subject Property.  (*Id.* at 3).  Casto then identifies the "Subject Well"—the Folger 5H Well—and opines that it "comes within close proximity of the Subject Property for a significant portion of its perforated lateral length."  (*Id.* at 4).  He further asserts that the

Folger 5H Well "was spud in March 2013, completed in June 2013, and began producing in July 2013." (*Id.*).  Casto then provides a general description of hydraulic fracturing.  (*Id.* at 5).

The Casto Report is merely an opinion without factual foundation in that it is largely based on Mr. Casto's statement of the general practices and procedures of fracking without presentation of facts showing what SWN actually did and how it conducted its fracking operations in June 2013.  Nothing in the Report indicates Mr. Casto conducted a physical or geological examination of the 11.07 Acre Property Sub-Portion or its subsurface estate.  And the facts which underlie the opinion are conclusory, speculative, and not supported by the record evidence.  Specifically, Mr. Casto offers a purely speculative and conclusory opinion that "SWN injected proppants beneath the Subject Property" merely because the Property is allegedly located "within the drainage half-length . . . of the Folger 5H well for a significant portion of the well's perforated lateral length."  (Doc. 54-2 at 7).  Even accepting this opinion as true, it does not create a genuine dispute of material fact as whether to SWN injected proppants that remain beneath the 11.07 Acre Property Sub-Portion (i.e., committed a physical intrusion onto Plaintiffs' property) in order to facilitate the drainage of natural gas.  *See Cho v. Prudential Ins. Co. of Am.*, Civil Action No. 19-19886, 2024 WL 5165459, at *9 n.10 (D.N.J. Dec. 19, 2024) ("Plaintiffs' reliance on their expert reports to create factual disputes is misplaced because the factual predicate of an expert's opinion must find some support in the record."); *see also Advo, Inc. v. Philadelphia Newspapers*,

*Inc.*, 51 F.3d 1191, 1198 (3d Cir. 1995) ("[E]xpert testimony without such a factual foundation cannot defeat a motion for summary judgment.").  There is simply no basis in the evidentiary record from which a reasonable jury could infer a continuing trespass and conversion.  *See, e.g.*, *Robertson*, 914 F.2d at 382 n.12 (3d Cir. 1990) ("We note that an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry summary judgment."); *Pennsylvania Dental Ass'n v. Med. Servs. Ass'n of Pennsylvania*, 745 F.2d 248, 262 (3d Cir. 1984) (in evaluating order granting summary judgment, "the factual predicate of an expert's opinion must find some support in the record"); *Ely v. Cabot Oil & Gas Corp.*, Civil No. 3:09-CV-2284, 2014 WL 7508091, at *18 (M.D. Pa. Apr. 21, 2014) ("The Plaintiffs weakly attempt to save this claim by relying on the testimony of their expert hydrologist, but the Plaintiffs' argument in this regard is no more than speculative and conclusory, and the record simply does not contain the requisite evidence to support this particular type of tort claim.").

The Casto Report at most supports the conclusion that Plaintiffs are claiming a permanent trespass—as opposed to a continuing trespass.  (Doc. 54-2 at 7) ("***Said proppants have remained beneath the Subject Property as of this date and will remain there forever***.") (emphasis added); (*Id.* at 5) ("Hydraulic fracture treatments are designed with the intent that once the pressure on the reservoir decreases enough for the fractures to heal, the fractures are held open (**permanently propped** open) by the tightly compacted grains of proppant.") (emphasis added); (*Id.* at 5-6) ("The half-length is the

drainage distance on one side of the wellbore created by the aforementioned hydraulically-induced fractures and the **proppants permanently placed therein**.") (emphasis added). The statute of limitations of a permanent trespass claim would have expired many years ago, as the only alleged act of trespass occurred in June 2013.

Plaintiffs have failed to identify any of the relevant facets of the Casto Report in their opposition papers. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 740 (3d Cir. 1994) ("If the plaintiffs wished to rely on the opinions of [their experts] to oppose summary judgment, they were required to identify the relevant facets of this testimony in their opposition to summary judgment."). Here, Plaintiffs failed to do so. Indeed, nowhere in their opposition brief or response to Defendant's Statement of Material Facts do Plaintiffs cite any facet of Mr. Casto's opinion.

Finally, the Casto Report provides legal conclusions and fails to provide any factual support to a claim of continuing trespass and conversion. Specifically, the Casto Report simply concludes that "SWN's hydraulic fracturing activities trespassed into and under the Plaintiffs' property, and SWN has been extracting natural gas from under said property since July 2013." (Doc. 54-2 at 7). This constitutes an improper legal opinion and conclusion. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006).

In sum, Plaintiffs fails to establish a genuine dispute of material fact as to their continuing trespass and conversion claims. If the proppants were to be considered a physical intrusion as the necessary predicate for a trespass claim, SWN again correctly

points out that it possessed the privilege to do so under the Lease assignment in effect

between SWN and Lessor Horn when SWN engaged in the fracking on the Folger 5H tract

in June of 2013. No reasonable jury could return a verdict in Plaintiffs' favor. Moreover,

assuming, *arguendo* that Plaintiffs have provided evidentiary support for trespass claim, that

claim would nevertheless be barred by the statute of limitations because Plaintiffs have

failed to establish a continuing trespass and, at most, a permanent trespass claim would fail

as matter of law due to application of the statute of limitations. (*See* Docs. 19, 26). It is

Defendant's burden to show the absence of a genuine dispute of material fact as to their

statute of limitations defense. *See El v. Southeastern Pennsylvania Transp. Auth.*, 479 F.3d

232, 237 (3d Cir. 2007) ("Because SEPTA sought summary judgment on its affirmative

defense . . . it would bear the burden of proof at trial and therefore must show that it has

produced enough evidence to support the findings of fact necessary to win."). And, for the

reasons discussed above and below, Defendant has sustained that burden.[19]

### D. Plaintiffs' Claims Are Barred by the Court's August 16, 2023 Order.

Defendant next seek summary judgment on Plaintiffs' trespass and conversion

claims, arguing that this Court's August 16, 2023 Order, finding that claim preclusion and/or

res judicata applied to Plaintiffs' claims, requires dismissal of the claims. (Doc. 52 at 29-32).

Plaintiffs do not oppose Defendant's motion on this ground and have thus waived and/or

---

[19] The statute of limitations for trespass and conversion is two years. *Caruso-Long*, 243 A.3d at 239 (citing 42 Pa. C.S.A. § 5524).

abandoned this issue. In the August 16, 2023 Order, the Court dismissed Plaintiffs'

Complaint without prejudice and granted Plaintiffs "leave to amend their Complaint to assert

claims alleged to have arisen after the time period encompassed within *Briggs I*." (Doc. 20

at ¶ 4).

Plaintiffs filed an Amended Complaint and this Court previously found that "Plaintiffs

are permitted to move forward with their claims arising after December 8, 2020, the date

after which the Court previously concluded that claim preclusion no long bars Plaintiffs'

Claims." (Doc. 26 at 21-24). More specifically, the Court held that "Plaintiffs' Amended

Complaint alleging a continuing trespass and conversion is not barred by claim preclusion

for acts alleged to have taken placed after December 8, 2020." (*Id.* at 24). This Court

stated that it "has previously determined that acts prior to December 9, 2020, the day after

the final judgment in [*Briggs I*], are barred by claim preclusion." (Doc. 26 at 7 n.1) (citing

Doc. 19 at 8-9). In the Amended Complaint, Plaintiffs' trespass and conversion claims are

based on the allegation that SWN's fracking of the Folger 5H Well "constituted a physical

intrusion into Plaintiffs' land." (Doc. 21 at ¶¶ 12.8, 12.11). Specifically, Plaintiffs alleged

that when SWN fracked the Folger 5H Well during June 2013, SWN injected "fluids and

proppants" into the 11.07 Acre Property Sub-Portion. (*Id.* at ¶¶ 12.6-12.8., 12.11).

According to Plaintiffs, these alleged proppants have remained beneath the 11.07 Acre

Property Sub-Portion ever since.

It is SWN's burden on summary judgment to show the absence of genuine material

factual dispute as to their defense of res judicata and the statute of limitations.  Under

Pennsylvania law:

> The support a claim of res judicata the party asserting this defense must show a concurrence of four conditions:  (1) identity of the thing sued upon; (2) identity of the cause of action; (3) identify of persons and parties to the action; and (4) identity of the quality or capacity of the parties suing or being sued.  *Stevenson v. Silverman*, 41 Pa. 187 (1965).  The essential inquiry is whether the ultimate and controlling issues have been decided in a prior proceeding in which the present parties had an opportunity to appear and assert their rights.

*Callery v. Mun. Auth. of Blythe Twp.*, 243 A.2d 385, 387 (Pa. 1968).  For the reasons set

forth in the Court's August 16, 2023 Order and accompanying Memorandum Opinion,

Plaintiffs claims are barred by claim preclusion/res judicata and the statute of limitations.

It is undisputed that there is no evidence that SWN injected any proppants or

fracking fluids after June 9, 2013.  (SOMF at ¶ 33).  It is further undisputed that Plaintiffs

have come forward with no evidence that SWN injected proppants and fracking fluids

beneath the 11.07 Acre Property Sub-Portion at any time, and certainly no time after June

9, 2013.  (*Id.* at ¶¶ 52, 56-58, 69-70).  It is further undisputed that Plaintiffs do not claim that

SWN actually drilled the Folger 5H Well bore into or underneath the 11.07 Acre Property

Sub-Portion or any other part of their Property.  (*Id.* at ¶ 54).  Plaintiff Adam Briggs admitted

that the sole alleged act of trespass by SWN was the fracking of the Folger 5H Well that

SWN completed between June 2-9, 2013.  (*Id.* at ¶ 57).  Plaintiff Adam Briggs also admitted

that he knew that the alleged fracking trespass occurred in June of 2013.  (*Id.* at ¶ 58).

Thus, to the extent that Plaintiffs could not establish a continuing trespass or conversion, as they could not, their claims are accordingly barred by res judicata/claim preclusion as well as the statute of limitations, as set forth in this Court August 16, 2023, Order and Memorandum Opinion. (*See* Docs. 19-20). Plaintiffs have asserted the same claims and sought the same damages against the same party based on the same set of facts alleged in *Briggs I*. These claims in fact were asserted in *Briggs I* and thus res judicata/claim preclusion as well as the statute of limitations bars Plaintiffs claims in this action. And, as noted, Plaintiffs did not oppose SWN's motion for summary judgment on these grounds. (*See* Doc. 55).

## VI.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment, (Doc. 51), will be granted. A separate Order follows.

Robert D. Mariani
United States District Judge